595 So.2d 1005 (1992)
ALLSTATE INSURANCE COMPANY, Appellant,
v.
Osvaldo Lorenzo Acosta CONDE, et al., Appellees.
No. 90-894.
District Court of Appeal of Florida, Fifth District.
March 6, 1992.
Chris Ballentine of Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, Orlando, for appellant.
Kathleen T. Murphy of Jugo & Murphy, Miami, for appellees.
EN BANC
HARRIS, Judge.
Allstate Insurance Company sued its insured, Osvaldo Lorenzo Acosta Conde, and the third parties injured by its insured, Clara Margarita Montero and her two children, Rolddy and Lourdes Aragon, for a declaration of its obligation under its policy. Allstate claimed that the acts of Conde which caused the injury were intentional and thus not covered by its policy. The trial court, in reliance on Vanguard Ins. Co. v. Townsend, 544 So.2d 1153 (Fla. 5th DCA 1989), held that the policy was not ambiguous and therefore was not subject to a declaratory action. Because we recede from Vanguard, we reverse.
It is necessary to consider the undisputed testimony of the two survivors of this most unfortunate tragedy  Margarita Montero and Lourdes Aragon.[1]
*1006 After a ten day separation from his family, Osvaldo Conde knocked on Margarita Montero's[2] bedroom window in the early hours of June 29th. Because Conde had been away, the children were sleeping in the bedroom with Ms. Montero. Lourdes accompanied Ms. Montero as she opened the front door to admit Conde into the home. He followed them back to the bedroom where Lourdes immediately returned to bed. Conde stood to the right of the room (next to the door) with Ms. Montero standing to the left. Conde pulled the gun and, after stating "I'm tired of everything" or "I have come to end it all," shot Ms. Montero through the chest. He then shot Lourdes in her side as she lay in bed and finally shot Rolddy through the head. He saw Ms. Montero leaving the bedroom and shot her, with his last bullet, through her back. When she still didn't fall, Conde hit her in the head with a bottle stating, "The children are already dead; why do you want to be alive?" Finally, he started "to press on [her] neck" as the police arrived.
Ms. Montero, on behalf of Lourdes and Rolddy, filed suit against Conde claiming alternatively, intentional wrongdoing (not covered by the policy) and negligent conduct. Because the complaint alleges facts that bring the action within the coverage of the policy and facts that exclude coverage, the insurer must defend its insured "at least until such time as the covered portions of the claim have been eliminated from the suit."[3]
But in this case there are not some claims that are covered and some that are not; the asserted claims are mutually exclusive. Either the claim is covered or it is not. Therefore, the insurer must provide defense until the coverage issue is resolved. In a case such as this  alternative, mutually exclusive theories  the indemnity issue and the duty to defend issue are inextricable. The resolution of one necessarily resolves the other. An early resolution of this issue is essential. As this court held in State Farm Fire and Casualty Co. v. Nail, 516 So.2d 1022, 1023 (Fla. 5th DCA 1987):
Moreover, the argument that State Farm should extend defense under a reservation of rights, instead of resolving the coverage issue in a separate declaratory judgment action in advance, ignores the fact that providing a defense where there is no legal obligation to do so constitutes an irreparable injury in and of itself.
Pursuant to Nail, Allstate filed this separate action for declaratory judgment asking that its obligations (rights, privileges, immunities) under its policy be determined under the facts of this case pursuant to Chapter 86. Allstate urged that coverage did not exist because (1) the shooting was intentional and (2) the victims were "insured persons" under its policy and thus excluded. The trial court entered summary judgment against Allstate holding that declaratory action is not available to determine the coverage issue based on the intentional act exclusion and further holding that the victims were not "insured persons" and were covered under the policy. We disagree with the trial court. In Vanguard we held that Chapter 86 can only be used to "settle the meaning of ambiguous language or clauses in an insurance policy." Vanguard, 544 So.2d at 1155. Other cases also hold this view, many before the *1007 amendment to the declaratory judgment act. This interpretation limits Chapter 86 to little more than a codification of the parol evidence rule. Chapter 86 should not be read so narrowly. One of the reasons for permitting parties to have their rights (and obligations) under contract determined is to avoid protracted and unnecessary litigation. Consider the purpose of the act:
86.101 Construction of law.  This chapter is declared to be substantive and remedial. Its purpose is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed.
Allstate asks in its complaint that the court determine that no coverage existed because the shooting was intentional. This clearly invokes the court's jurisdiction under section 86.011(2) and not section 86.021.[4]
In effect Allstate is asking that the court, pursuant to section 86.011 determine "the existence or nonexistence" of a "fact [to wit: whether the shooting was intentional] upon which the existence or nonexistence of ... immunity [lack of coverage] ... does or may depend[.]" The legislature has given the court the authority to do so.
The court in Prudential Property and Cas. Ins. v. Castellano, 571 So.2d 598 (Fla. 2d DCA 1990) determined that declaratory action is an appropriate vehicle for determining this issue. If a declaratory judgment action is permitted then all parties know at an early date their rights and obligations under the policy and are able to deal appropriately with each other.
In International Surplus Lines Ins. Co. v. Markham, Norton & Co., P.A., 580 So.2d 251 (Fla. 2d DCA 1991) the court held that declaratory action was indeed appropriate for the determination of both the duty to defend and the duty to indemnify issue. Markham holds, however, that the duty to defend should first be determined from the facts pleaded in the complaint against the insured and that the duty to indemnify issue, if the duty to defend exists, should be deferred until liability of the insured is established.
But Markham did not involve a case in which the third party sued the insured on alternative, mutually exclusive theories. In Markham, the insured was sued because of breach of fiduciary duty and professional negligence. In its separate suit against its insured, the insurer contended there was no duty to defend or indemnify because (1) failure to disclose material information and (2) the allegations in the complaint fell within two exclusions of the policy. The Markham court held that the insured was entitled to a determination as to whether the allegations of the complaint fell within the policy exclusions and thus established no duty to defend. If there is a duty to defend (thus no exclusion) then the liability issue should be tried first because if no liability exists then the issue of failure to disclose material information becomes moot.[5]
*1008 Markham, under its facts, is good law. But, in an alternative, mutually exclusive theory of liability case, the Markham procedure must be modified. Instead of looking merely at the allegations of the complaint to see if the duty to defend exists, since there are alternative, mutually exclusive theories, the court must, in the declaratory judgment action, determine the "fact" which will determine the duty to defend/indemnity issue. In this all or nothing type case, there is not a separate indemnity issue to be tried later.
It is only appropriate that the insurer be permitted to participate in the coverage issue in an alternative, mutually exclusive case. Otherwise, the insurer must sit back and provide an attorney to "defend" an insured by, in concert with the plaintiff, establishing that what might be the most deliberate shooting was, in fact, a negligent shooting. Even if not bound by the coverage verdict, it may nevertheless suffer the Nail "irreparable harm" by providing a defense when it had no legal obligation to do so.
It is, of course, essential that the injured party be made a party to the declaratory judgment action.[6] If the declaratory judgment action determines that the insured's conduct was intentional, then there would no longer be a negligence action to defend. On the other hand, if the insured's conduct was found to be negligent, then the insurer would automatically be liable on the injured party's negligence action recovery.
Most often, as in Clemmons v. American States Ins. Co., 412 So.2d 906 (Fla. 5th DCA 1982), Rev. denied, 419 So.2d 1196 (Fla. 1982), once the undisputed facts are established the duty to defend/coverage issue becomes one of law to be decided by the judge. If factual disputes relevant to such issue continue to exist, however, then the court should determine such "facts" as are necessary to determine the issue in the declaratory judgment action. If all parties are joined, then the decision is binding and the problem encountered in Insurance Co. of North America v. Whatley, 558 So.2d 120 (Fla. 5th DCA 1990) will be avoided.
We also find that declaratory action is appropriate to determine whether the victims were "insured person[s]" under the policy definition "you, and if a resident of your household: (a) any relative; and (b) any dependant person in your care" and that the court erred in entering its summary judgment finding that, as a matter of law, the victims were not "insured persons."
We therefore reverse the summary judgment but certify the following question:
MAY THE INSURER PURSUE A DECLARATORY ACTION IN ORDER TO HAVE DECLARED ITS OBLIGATION UNDER AN UNAMBIGUOUS POLICY EVEN IF THE COURT MUST DETERMINE THE EXISTENCE OR NONEXISTENCE OF A FACT IN ORDER TO DETERMINE THE INSURER'S RESPONSIBILITY?
REVERSED and REMANDED.
COBB, COWART, PETERSON and GRIFFIN, JJ., concur.
GRIFFIN, J., concurs specially with opinion in which GOSHORN, C.J., and COWART, J., concur.
W. SHARP, J., concurs in part and dissents in part with opinion.
DIAMANTIS, J., concurs in part and dissents in part with opinion in which DAUKSCH and W. SHARP, JJ., concur.
GRIFFIN, Judge, concurring specially.
I concur in the majority opinion because it attempts to deal with what I view as a problem that needs solving. The problem is well illustrated by this case. Given the undisputed facts of this case, absent considerations of insurance (the intentional act *1009 exclusion), it would never occur to a lawyer to plead this plainly intentional tort as negligence. It is no accident (no pun intended) that this complaint contains almost no allegations of fact. The plaintiff can't plead any facts; if he does, he pleads himself out of coverage and out of negligence. At least, in the Castellano case, because of the alleged struggle for the gun, there may have been an arguable factual basis for a claim of negligence. In this case, there is none. I can see no good faith basis for asserting a claim of negligence in this case, although I recognize it is standard practice. The problem is that such a pleading creates a perfect conspiracy between a plaintiff and the insured and the insurer has no remedy.
The plaintiff pleads negligence in a case like this because he wants a deep pocket from which to satisfy a judgment or, even better, to obtain a settlement. Normally when a defendant is sued on a theory that is inadequately pleaded, he gets the claim dismissed or, if the claim is invalid under controlling law, he gets a summary judgment. But in cases such as this the normal antidotes for invalid claims do not work. An insured defendant is often totally committed to the negligence pleading of the plaintiff because as long as the negligence claim is included in the complaint, the insured must be provided a defense on the intentional tort claim, a benefit he would not have if the spurious negligence claim were missing. It is also more likely the insurer will come up with the money to settle the entire case based on the cost of defending the negligence claim. In many of these cases, the defendant even has some relationship with the victim, or a sense of remorse, and thus has either an emotional or financial stake in having the plaintiff succeed in recovering a judgment under a theory covered by insurance. In a case where neither the plaintiff nor the defendant wants the covered claim disposed of, it is most unlikely to disappear.
If the fictional covered claim is not disposed of, the insurer is faced with providing a defense of the entire action through trial, the cost of which is generally the impetus for paying sums to a plaintiff in settlement that would not be payable under the policy. Only the insurer is interested in quickly defeating the covered claims and the insurer has no forum to be heard.
I appreciate the fact that the duty to defend is broader than the duty to indemnify and that the insurer independently covenants to defend claims against the insured that are false, fraudulent or groundless, but quick and successful resolution of the issues that give rise to coverage deprives the insured of nothing he is entitled to receive. If the "false, fraudulent or groundless" claim of negligence is expeditiously defeated, the defendant has received what he is entitled to (defense of a covered claim through its successful conclusion). If, as the divided views of this court illustrate, a procedural solution proves too elusive, perhaps such claims should be stopped at their source.
GOSHORN, C.J., and COWART, J., concur.
W. SHARP, Judge, concurring in part and dissenting in part.
The dilemma in these cases is to protect the insured's contract right to a defense, and the insurance company's right not to have to defend beyond the scope of its contract duty, when there is an injured third party who has sued the insured, or may do so. Since all three parties cannot be forced to litigate these issues in the context of a single suit to which they will all be bound, there is necessarily some danger of multiple suits and inconsistent judgments.
Either the insured or the insurer will be inconvenienced. In my view, if one must be, the proper choice ought to be the insurance company because it has sold and been paid for something beyond a contract to indemnify  a duty to defend its insured in any lawsuit, which on its face, could encompass insurance coverage.[1] In Vanguard Insurance Company v. Townsend, 544 So.2d 1153 (Fla. 5th DCA 1989), we opted *1010 to give the benefit of this dilemma to the insured. We did not allow the insurance company to preempt and determine the coverage issue when there was an ongoing lawsuit involving potential coverage (intentional act versus negligent act). We said in those circumstances, the tort suit should go forward, and a declaratory judgment suit by the insurance company brought against its insured was improper. To protect the insurance company's subsequent right to later raise the coverage issue, we noted that it would not be bound by res judicata or collateral estoppel by the injured party's lawsuit against the insured so long as it honored its duty to defend and gave proper notice that it was reserving its rights to later dispute coverage.
If we must recede from Vanguard, I much prefer the approach taken by the Second District Court of Appeal in International Surplus Lines v. Markham, 580 So.2d 251 (Fla. 2d DCA 1991). Thus, I concur with Judge Diamantis' opinion. The resolution by the majority appears to me to be the least equitable and workable.
For example, assume the insured is solvent, and faces a large damage claim from an injured third party, based on either a negligent (covered) or intentional (not-covered) act. If the insurance company can preempt with a declaratory suit to determine coverage against its insured, and if it obtains such a judgment (intentional act), it will turn its back on the tort suit. The insured will then have to pay for two lawsuit defenses, despite the insurance policy, which guaranteed him at least one defense. And:
1) If the tort suit results in a verdict of no liability, the "insured" will be relieved, but understandably annoyed at having had no insurance company defense for which he contracted;
2) If the tort suit results in a judgment on a not-covered basis, the insured has still been deprived of his right to a defense, and has had to finance the first declaratory judgment suit himself;
3) If the tort suit results in a judgment against the insured, based on grounds which would have been covered under the policy, the insured may well have been better advised not to have any insurance in the first place. He gets no indemnity because of the res judicata effect of the declaratory judgment suit, no contract for defense, and has had to defend two lawsuits instead of one.
The majority suggests that one solution to this dilemma is to make the injured person(s) a party to the declaratory judgment suit. But, there is no satisfactory mechanism to require that this happen. Identifying all potential plaintiffs and then roping them into the law suit, possibly against their wills, may prove an impossible task. This will necessarily fall on the insureds' shoulders because the insurance companies will have no motivation to bring in such injured third parties. They can demand a jury trial (at least on negligence issues) and keeping the secret of (possible) insurance coverage[2] from the jury would then be lost. Further, in the case of solvent insureds (as discussed above), the insurance companies will have no motivation to include the injured parties in the declaratory suit because the failure to do so will not jeopardize their best interests.
DIAMANTIS, Judge, concurring in part and dissenting in part.
I concur in the majority opinion to the extent that it recedes from Vanguard Ins. Co. v. Townsend, 544 So.2d 1153 (Fla. 5th DCA 1989) and allows an insurer to bring a declaratory judgment action to determine first whether there is a duty to defend its insured and second whether there is a duty to indemnify its insured. I agree that there should be no artificial distinction made between whether the policy provisions are ambiguous or unambiguous. In the instant case, the exclusion for intentional acts is unambiguous while the exclusion for "insured person(s)" is obviously ambiguous and must be interpreted.
However, unlike the majority, I recognize that in receding from Vanguard, we *1011 are in conflict with the supreme court's decision in Columbia Casualty Co. v. Zimmerman, 62 So.2d 338 (Fla. 1952), where the court specifically held that the declaratory judgment statute had not been and should not be extended to cover the situation where there is no doubt as to the meaning of the insurance contract or its proper interpretation but there is doubt as to what will be the ultimate outcome of a consideration of disputed facts. Zimmerman was later cited by the supreme court in Bergh v. Canadian Universal Ins. Co., 216 So.2d 436 (Fla. 1968).
District courts have taken divergent views on this issue. One view strictly adheres to Zimmerman. See, e.g., Cruz v. Union General Insurance, 586 So.2d 91 (Fla. 3d DCA 1991); New Amsterdam Casualty Co. v. Intercity Supply Corp., 212 So.2d 110 (Fla. 4th DCA 1968). Another view apparently allows a declaratory action even if the policy provisions are unambiguous and only disputed factual issues are involved. See, e.g., Prudential Property & Casualty Ins. Co. v. Castellano, 571 So.2d 598 (Fla. 2d DCA 1990). The view allowing a declaratory action in this situation does so because of the present wording of paragraph (2) of section 86.011, Florida Statutes (1989), which commences: "Of any fact ..."[1]
Because of the language of section 86.011, I agree that declaratory relief should be available regardless of whether the policy provision is ambiguous or unambiguous. I also agree that this issue should be certified to the supreme court so the court can reconsider the ruling set forth in Zimmerman and restated in Bergh. However, I must respectfully dissent from the apparent effort of the majority to make the coverage issue the main focus in situations where there is an independent tort action against an insured and a separate issue concerning coverage.
In Castellano, an insured shot a third person and the third person sued the insured for damages. That lawsuit settled by stipulation of the parties and the insurer then brought a declaratory action to determine coverage under its insurance policy. Because there was no pending tort action against the insured, the declaratory action could proceed to determine the coverage issue or the duty of the insurer to indemnify its insured.
In the case at bar an independent tort action is pending. Consequently, the procedure set forth in International Surplus Lines v. Markham, 580 So.2d 251 (Fla. 2d DCA 1991) is applicable. In Markham, the second district, which was the same court that decided Castellano, sets forth a logical and expeditious procedure for handling a case where there is an independent tort action pending as well as a coverage dispute by way of a declaratory action. The trial court initially examines the allegations of the complaint filed in the tort action and determines whether the insurer has a duty to defend its insured in the tort action. If it is determined that the insurer has no duty to defend its insured, the issue of whether the insurer has a duty to indemnify its insured in the independent suit is moot. On the other hand, if the insurer has a duty to defend, then any determination as to its duty to indemnify should normally be deferred until the issue of the insured's liability is decided. If there is a verdict of no liability, a second trial on the coverage issue is avoided because the insurer has no duty to indemnify its insured. This rationale of Markham is equally applicable to the situation where a suit is filed against the insured under two alternative claims of recovery, one of which is covered and one of which is excluded by the policy provisions, as well as in the situation where the insurer is denying coverage of any claim because of exclusionary policy provisions. The former situation of alternative claims is involved in the instant case while Markham involved the latter situation of a *1012 complete denial of coverage based on exclusionary provisions of the policy. In Markham, the court states:
Thus, the only determination for the trial court to make in the declaratory judgment action is whether, under the professional liability insurance policy, ISLIC is required to defend Markham against the complaint filed by Raeburn. If the factual allegations of the complaint fall within the exclusions of the policy, then ISLIC is not required to defend the Raeburn action. Any doubt as to whether the policy provides a duty to defend should be resolved against ISLIC. New Amsterdam Casualty Co. v. Knowles, 95 So.2d 413 (Fla. 1957).
Id., at 253.
Subsequently, the court in Markham cites State Farm Fire and Casualty v. Nail, 516 So.2d 1022 (Fla. 5th DCA 1987), a case upon which the majority places unfounded reliance. Nail involved a situation where the trial court consolidated, over the insurer's objection, the declaratory action with the independent tort action. Markham answered the insured accounting firm's argument that the insurer was not entitled to a declaratory decree even as to a duty to defend quoting the entire applicable language of Nail:
Further, the basis for the language upon which the firm heavily relies is a citation to State Farm Fire and Casualty Co. v. Nail, 516 So.2d 1022 (Fla. 5th DCA 1987), in which the court held that it was a departure from the essential requirements of law to consolidate a liability action with a coverage action. In so holding the court cogently noted:
If consolidation orders such as that entered below were upheld, then declaratory judgment actions clarifying the rights of the respective parties would be strongly discouraged. Moreover, the argument that State Farm should extend a defense under a reservation of rights, instead of resolving the coverage issue in a separate declaratory judgment action in advance, ignores the fact that providing a defense where there is no legal obligation to do so constitutes an irreparable injury in and of itself.

Id. at 1023. This rationale is particularly applicable in this case where the trial court has deferred the determination of the duty to defend issues pending the outcome of the liability suit for which ISLIC contends it has no such duty.
Accordingly, we hold that the trial court departed from the essential requirements of law in abating ISLIC's declaratory judgment action against the firm. Therefore, we grant the petition, quash the trial court's order and remand for further proceedings consistent with this opinion. Upon remand, if the trial court determines that ISLIC has no duty to defend, the issue of whether ISLIC has a duty to indemnify the firm will be moot. On the other hand, if ISLIC has a duty to defend, then any determination as to its duty to indemnify should be deferred until the issue of Markham's liability is decided. See Nat'l Union Fire Ins. Co. [v. Lenox Liquors, Inc.] 358 So.2d 533 at 535 [(Fla. 1977)]. (Emphasis added). (Footnote omitted).
Markham, at 254.
While both Markham and Nail hold that the insurer is entitled to a declaration of its duty to defend, Markham additionally sets forth the most expeditious procedure to resolve the issue of whether there is a duty to indemnify. This procedure in Markham results in the most practical and least time-consuming method of handling the situation where there is a coverage question and an independent tort action pending against the insured. This procedure results in the most expeditious use of the available and valuable time of the overburdened trial courts of this state and, in many cases, may save the added expense of litigating two lawsuits. However, I recognize that there may be situations where the trial court in its discretion would elect to try all coverage issues including the duty to indemnify prior to the tort action. However, unlike the majority, I would not interfere with the trial court's discretion in this manner by either mandating or even suggesting that the matter of the duty to indemnify *1013 should somehow be given precedence by being initially resolved.
While the majority suggests that it is essential to join the injured plaintiff in the coverage dispute in order to bind the plaintiff, there is no pleading requirement that the plaintiff be joined in any declaratory action brought by an insurer against its insured. Also, a plaintiff may resist being joined in a situation where the plaintiff has filed suit against a solvent insured and desires to proceed with the tort case and not be distracted with litigating a coverage question which delays the tort action. Interestingly, in Markham the insurer and the insureds (certified public accountants), were the only parties to the declaratory action. In Nail, the court notes that "[o]nly Nail (the insured) is a common party to each action." Id. at 1023.
I prefer to handle this case as did the court in Markham with the caveat that if the trial court in a given situation deems it appropriate then, in its discretion, it could elect to try the issue of the duty to indemnify prior to the tort action. Unlike the majority, I would defer to the discretion of the trial court in handling the procedural aspects involved between the tort case and the coverage case. It is not our function to interfere with the discretionary procedural matters of trial courts.
In summary, I would affirm the trial court's ruling that Allstate Insurance Company has a duty to defend the underlying tort action against Conde based on the allegations of the complaint filed against him.[2] I would defer any determination as to Allstate's duty to indemnify Conde until the issue of Conde's liability is decided. I would also reverse the trial court's holding that the deceased victim was not an "insured" under the exclusionary provision of Allstate's policy because this matter pertains to the duty to indemnify and should be deferred until the issue of Conde's liability is decided. I would also certify the issues involved in the instant case to the supreme court.
DAUKSCH and W. SHARP, JJ., concur.
NOTES
[1] Although the trial court granted Conde's motion to strike the Notice of Filing of Depositions "to the extent that the depositions filed with said notice shall not be used in support of Allstate Insurance Company's objection to Motion for Summary Judgment" said depositions are nevertheless a part of the record. Further, because of the basis of the trial court's ruling (strict reliance on Vanguard from which we now recede), the case-specific facts were irrelevant to the trial court. They are relevant to the appeal only to show that there is a legitimate issue that Conde's conduct falls within a policy exclusion.
[2] Although there had been no formal ceremony, Conde and Montero lived as husband and wife and the children of Ms. Montero considered Conde as their father.
[3] C.A. Fielland, Inc. v. Fidelity & Casualty Co. of New York, 297 So.2d 122, 127 (Fla. 2d DCA 1974), Cert. denied, 309 So.2d 6 (Fla. 1975). Conde "purchased" not only an indemnity contract but also a contract to defend him from all claims  even fraudulent  covered by the policy. So long as the negligence count remains against him, the insurer must defend him. If, however, the cause of action against Conde is limited to the uninsured intentional act, he is entitled to neither indemnity nor defense.
[4] In Columbia Cas. Co. v. Zimmerman, 62 So.2d 338 (Fla. 1952), the court, limiting its consideration to what is now section 86.021 (the power to construe deeds, wills, contracts) denied the use of a declaration action to determine purely factual matters. The majority in Zimmerman, perhaps because of the pleadings, did not consider the more expansive provisions of what is now section 86.011 which specifically authorizes the court to determine if a fact exists (intentional shooting) which would establish the existence of an "immunity, power, privilege or right" (lack of coverage). If the legislature did not contemplate some fact finding in declaratory actions, it is curious why section 86.071 provides that "a determination of an issue of fact" may be submitted to a jury. Because of the general statements in Zimmerman, however, we certify the question to the supreme court.
[5] Both dissents urge that the Markham procedure be employed in this case  that is, first determine if there is a duty to defend and, if so, stay the duty to indemnify issue until the resolution of the negligence action. Neither dissent explains how you can determine the duty to defend without also, at the same time, determining the duty to indemnify. If there is no duty to indemnify in a case such as this, there can be no duty to defend; if there is no duty to defend, there is no argument that indemnification must follow. THERE IS NOTHING TO DEFER. In Markham the court held that if the declaratory judgment action proved that the exclusions of the policy applied, then there would be no duty to defend but, in Markham, there were nonexclusion defenses to indemnity. These defenses, which would have no impact on the duty to defend, would properly be deferred until after liability was determined.
[6] The plaintiffs are, of course, essential parties if they are to be bound by the coverage decision.
[1] Vanguard Insurance Company v. Townsend, 544 So.2d 1153 (Fla. 5th DCA 1989).
[2] § 627.7262, Fla. Stat. (1989).
[1] Section 86.011 provides in pertinent part: "The court may render declaratory judgments on the existence, or nonexistence: (1) Of any immunity, power, privilege, or right; or (2) Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future."
[2] In the instant case the majority sets forth alleged factual matters that it gleans from depositions which the trial court struck for purposes of Allstate's opposition to appellees' motion for summary judgment because these depositions were filed nine days after the hearing on the motion. The subsequent hearing regarding Allstate's motion for rehearing and/or clarification did not involve the matter of the striking of those depositions; consequently, I respectfully submit that these depositions should not be considered by us. As the trial court properly did, I would also base any holding regarding whether Allstate had a duty to defend Conde solely upon the allegations contained in the complaint filed against him.