675 So.2d 963 (1996)
Earnest HAGEN and Jerry M. Richardson, and Della L. Richardson, his wife, Appellants,
v.
AETNA CASUALTY AND SURETY COMPANY, etc., et al., Appellees.
Nos. 94-1368, 94-1443.
District Court of Appeal of Florida, Fifth District.
May 24, 1996.
Rehearing Denied July 2, 1996.
*964 Robert J. Mayes of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for Appellant Earnest Hagen.
William A. Bald of Dale & Bald, P.A., and Stephen J. Pajcic, III of Pajcic & Pajcic, P.A., Jacksonville, for Appellants Jerry M. Richardson and Della L. Richardson, his wife.
Robert J. Jack, and Wallace W. Tudhope, of Jack, Tudhope & Wyatt, P.A., Maitland, for Appellees.
En banc.
HARRIS, Judge.
We have elected to consider this case en banc. Ernest Hagen and Jessie Ward, in partnership, operated a small retail carpet store under the name of E & J Carpet Country (E & J). It was a small operation which neither owned nor had access to a forklift. It also owned no vehicles but relied on the privately owned vehicles of Hagen and Ward in the operation of its business.
Jerry Richardson was an employee of Carpet Transport which was in the business of delivering carpet to E & J and other retail carpet stores. When the retailer had no forklift, it was common practice to pull the carpet out of the delivery truck with a vehicle owned by the retailer. Richardson carried a rope with him for this purpose.
On October 29, 1987, Richardson delivered carpet to E & J. Hagen was out of town at this time. In order to unload the carpet, Richardson tied one end of the rope to the carpet in the truck and someone from E & J tied the other end to the bumper of a vehicle used regularly by E & J for this purpose. The vehicle was then pulled forward, thereby pulling the carpet out of the delivery truck. Three rolls of carpet had thus been uneventfully pulled from the truck; however, as the fourth roll was being pulled, it knocked Richardson down and fell on him. He was injured.
Richardson sued Hagen and Ward both individually and as the partnership. Aetna, their commercial general liability insurance insurer, was notified of the action and commenced a defense. The original complaint claimed liability based on Ward's negligent operation of the vehicle in the unloading of the carpet.
After investigating the claim and the facts giving rise to the injury, Aetna determined that the claim was for an injury excluded from its policy and, after proper notice to its insureds, withdrew from representation. It appears that after Aetna withdrew from representation, *965 Richardson's complaint was amended so that "the sole allegation of negligence was that (E & J) failed to have proper equipment (such as a forklift) for the unloading of carpet. There was now no claim that Ward operated the van negligently." There is no indication in this record, nor in the allegations of the present bad faith action against Aetna, that it was ever notified of this amended complaint. A judgment in favor of Richardson was entered against Hagen. Both Hagen and Richardson claim bad faith in this action. After determining that there was no duty to indemnify or defend, the trial court granted summary judgment in favor of Aetna. Hagen and Richardson appeal.
Regardless of the allegations of the complaint, it is the underlying facts that determine the duty to indemnify. Aetna's policy involved in the action contained the following exclusion:
This insurance does not apply ... to bodily injury ... arising out of the ... operation, use ... of any automobile ... operated by... the insured.
The term "arising out of" is broader in meaning than the term "caused by" and means "originating from," "having its origin in," "growing out of," "flowing from," "incident to" or "having a connection with" the use of the vehicle. National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971). In appellants' brief, they assert the following:
The accident happened because Mr. Ward, lacking a forklift or other appropriate material handling device, attempted to pull a role of carpet out of the Carpet Transport truck by means of a rope tied to the carpet and the bumper of Mr. Ward's van. The pulling of the carpet caused one of the rolls to fall and injure Richardson.
If asked whether this injury arose out of the operation or use of a vehicle, any reasonable person[1] would, after inquiring as to whether it was a trick question, answer in the affirmative. Appellants concede that this would be the proper answer if we were dealing with a coverage issue under an automobile's liability insurance policy. They urge, however, that since we are here dealing with an exclusionary clause, a stricter construction should be applied in order to find coverage. We disagree.
The court in Corbo considered a similar request for strict construction. In that case, the homeowner policy excluded injuries arising out of "the ownership, maintenance, operation, use ... of (1) automobiles ... while away from the premises...." The court stated:
Appellant contends that there is a distinction between the construction of basic coverage provisions which obtains in its automobile liability policy, and exclusions or exceptions to coverage in Gulf's homeowner's policy, and a stricter rule of construction applied when coverage is excluded.
We accept appellant's premise that exclusionary clauses are narrowly construed against the insurer but reject the attempted application to this case, observing that while rules of construction are applied where there is doubt or ambiguity, plain language requires no construction.
Corbo, 248 So.2d at 240, 241.
We agree with Corbo that if a policy provision is unclear, it should be construed strictly against the insurer. However, if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision.[2]
*966 The policy provision in our case is not ambiguous. It clearly excludes injuries arising out of the use of a vehicle. The question in our case is not what the exclusionary clause means, but whether the alleged injury arose out of the use of a vehicle. Construction of the policy is not the issue; applying the admitted facts to the policy provision is our chore.
Appellants contend, and rightfully so, that if the use of the vehicle was merely incidental to the injury, then coverage would obtain. In that vein, it is suggested that since several strong men could pull the carpet out of the truck, the use of the vehicle was merely incidental to the injury. The analogy is flawed. Whether it was the vehicle or the several strong men that supplied the source of the energy, the injury still resulted because the carpet was pulled from the truck while Richardson was in the zone of danger. The source of the energy that did the pullingthe vehicle or the several strong menwas critical to the cause of the injury. Even though there would have been coverage if, in fact, the carpet had been unloaded by several strong men, it was not. That does not change the fact that since the vehicle was actually used in the unloading process in such a way as to cause injury, coverage did not apply.
There is a proper analogy involving the several strong men. If several strong men had grabbed hold of the carpet directly and, being unmindful of the location of Richardson, had pulled the carpet off the truck thereby injuring him, it would prove that the use of the rope was merely incidental to the injury. It is the fact that force was used to blindly pull the carpet off the truck, not the manner in which the force was applied to the carpet, that caused the injury.
Appellants suggest that their position is supported by American Modern Home Insurance Co. v. Rocha, 151 Ariz. 595, 729 P.2d 949 (Ct.App., 1986), and Lawver v. Boling, 71 Wis.2d 408, 238 N.W.2d 514 (1976). Such is not the case. Actually these cases are good examples of how to determine whether something is the cause of an injury or is merely incidental to an injury.
In Rocha, a vehicle and a rope were used to pull a tripod into an upright position. Several strong men could have done the same thing (with or without the rope). But the injury did not result from the force exerted to pull the tripod into position. It resulted when the tripod collapsed because of its faulty construction. It would have collapsed regardless of how it was brought to the upright position. Therefore, both the vehicle and the rope were merely incidental to the injury. But a different decision would have resulted had the tripod been dragged into someone, thereby causing injury.
In Lawver, a lift chair was hoisted into position by a rope tied to a vehicle. It could have been hoisted by several strong men. But it was not the hoisting that caused the injury. The negligence in Lawver was the selection of a defective rope to carry the load. The rope would have snapped regardless of how the lift chair was hoisted into position. The vehicle and the use of a rope (as opposed to the selection of a defective rope) were merely incidental to the injury. Again, there would have been a different result if Lawver had been pulled from the lift chair because the vehicle suddenly lurched forward.
Unlike our case in which the accident resulted only because Ward failed to make sure that Richardson was out of danger before he drove forward, both Rocha and Lawver involved injuries resulting clearly from negligence unrelated to the driving of the vehicle. In Rocha, the injury would not have occurred "but for" the use of the defective tripod that collapsed; in Lawver, the injury would not have occurred "but for" the use of a defective rope that unraveled and snapped.
In our case, the rope did not snap and the carpet was not defective. Everything occurred as plannedexcept that Ward did not permit Richardson to move to safety before pulling the van forward. Both Rocha and Lawver indicate that had the only cause of the injury been driving the vehicle with a proper rope attached to the load, the injury would have been excluded from the policy.
The only "but for" in our case was the negligent operation of the van unless we conclude that the decision to drive the van with a rope attached to the bumper and tied *967 to a roll of carpet was a separate and distinct act of negligence. This gets us to another proposed theory of liability which finds support in the Iowa case of Kalell v. Mutual Fire and Automobile Insurance Co., 471 N.W.2d 865 (1991), wherein the court held:
The use of the pickup to provide the force, we believe, does not excuse the insured from any negligence in his decision to remove the limb with the rope. This could be found to be an independent act of negligence and one which is covered by the policy. (Emphasis added).
So far, Kalell has been limited to Iowa. But even Kalell recognizes that the vehicle was not merely incidental to the injury. It holds that the "decision" to use a rope is a separate act of negligence which is in the nature of a concurring cause. But it is not a concurring cause. Under Florida law, "concurring causes are two separate and distinct causes that operate contemporaneously to produce a single injury." Goldschmidt v. Holman, 571 So.2d 422, 424 (Fla.1990). First, the decision to do an act is not a "separate and distinct cause" of an injury resulting from the doing of the act. The decision merely brings about the performance of the act. Second, the decision to do the act, at least in this case, was not "contemporaneous" with the performance of the act which caused the injury. After the decision was made, a rope had to be acquired and tied to the vehicle and the carpet. Even then, no injury could result until the vehicle was pulled forward with Richardson in the zone of danger.
Kalell holds that the "decision" was a separate negligent act justifying liability; appellants herein urge that the negligence was in not having a forklift; others might say the "plan" to unload the carpet was unnecessarily dangerous and would justify liability; and still others might find liability simply because there was "negligence in the way the carpet was unloaded." However this concept is worded, it should be fairly and completely stated. The "decision" was not merely to use a rope, it was to use a rope in conjunction with the power of a vehicle to do the unloading; the failure to have a forklift caused the use of the vehicle; the "plan," even if unnecessarily dangerous, required the power of the pulling vehicle; and the "way the carpet was negligently unloaded" was in driving the van forward even though the driver, knowing Richardson was somewhere in the zone of danger, failed to make sure he had moved to safety.
But whether we consider the "decision," "the failure to have a forklift," the "plan" or the "negligent unloading," each necessarily involves the use of the vehicle in the act which caused the injury, and all injuries arising out of such use are expressly excluded by the policy terms.
To put it another way, because Hagen and Richardson didn't have a forklift, they made a "decision" to come up with a "plan" to "unload (negligently)" a roll of carpet from the truck by using a rope tied to a vehicle and then driving that vehicle forward. The argument which divides this incident into segments concedes that the "act" itself (driving the vehicle forward to pull the carpet off the truck) is excluded from the policyotherwise there is no need for sequencing. But the concept that the failure to have a forklift, the decision to do the act, the plan to do the act and the result of doing the act (unloading) are separate and distinct incidents of negligence from the act itself is metaphysics at its best.
The effort to change the focus from the fact that an injury results from the operation of a vehicle is not new. In Gargano v. Liberty Mutual Insurance Company, 384 So.2d 220 (Fla. 3d DCA 1980), the plaintiff urged as an independent act of negligence the "negligent entrustment" of the vehicle to a minor child. The court rejected this theory, holding that any negligent entrustment necessarily arose out of the ownership, operation or use of the vehicle within the meaning of the exclusionary clause of the homeowner's policy.
Also in Atkins v. Bellefonte Insurance Company, 342 So.2d 837 (Fla. 3d DCA 1977), the court was confronted with the same exclusionary clause when considering an injury which resulted from a collision involving two vehicles. The defendant school was sued not because the improper operation of its vehicle caused the collision (an excluded act), but *968 because it was negligent in allowing a minor to escape from the school thus requiring that the vehicle be used to return the child. The court rejected this claim, observing that the injury would not have resulted but for the use of the school's vehicle. Why the vehicle was used was not a legal cause of the accident.
Similarly, the fact that E & J did not own a forklift was not the legal cause of this injury; the negligent use of its vehicle was.
Even though the parties stipulated that the issue of duty to defend would be considered after the court determined the issue of the duty to indemnify, the court determined that under the facts presented to it, there was no duty to defend or to indemnify. Under the facts of this case, we agree.
It should be noted that Aetna fully investigated the original complaint and determined that the facts of the case precluded coverage. Even though the complaint was amended to assert a different basis for recovery in order to avoid the exclusionary clause, the facts have not changed. There remains no duty to indemnify. Further, since appellants have not alleged that the amended complaint was ever provided Aetna, an action for bad faith settlement was never properly alleged. Aetna urges that the amended complaint was filed in bad faith in an effort to disguise the true nature of the cause of the injury. We find no bad faith. We believe that Richardson was attempting to establish a new concept of negligence that would avoid the exclusionary clause. We simply think he failed. Even so, we still have the problem of lack of record notice to Aetna of the amended complaint.
Florida courts discourage trial by ambush. Aetna should not be liable for failing to defend a cause of action not brought to its attention. Appellants have not contended in this appeal that Aetna was wrong in failing to defend the cause of action originally pled by Richardson.
The court in Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810 (Fla. 1st DCA 1985), stated the principle as follows:
The rule is well established that where the complaint alleges facts that clearly do not fall within the policy liability coverage provisions and the insurer nevertheless assumes the defense of the action, the insurer may conduct an investigation and, upon determining the true facts and concluding no coverage exists, may withdraw its defense of the action against the insured without having waived its rights and defenses as to coverage. (Citations omitted). Similarly, where the original complaint fails to allege facts within the policy coverage, if it later becomes apparent from an amended pleading that claims not originally within the scope of the pleadings are being made which are within the insurance coverage, the insurance carrier, upon notification, would become obligated to defend.
Id. at 8145 (emphasis added).
We find appellants other contentions without merit.
AFFIRMED.
DAUKSCH, COBB, W. SHARP, THOMPSON and ANTOON, JJ., concur.
GOSHORN, J., dissents with opinion in which PETERSON, C.J., concurs and GRIFFIN, J., concurs in part.
GRIFFIN, J., dissents, with opinion.
GOSHORN, Judge, dissenting.
Because I believe that Aetna had both a duty to indemnify and a duty to defend Hagen under his commercial general liability policy, I respectfully dissent.

DUTY TO INDEMNIFY
A. The Exclusionary Clause
I begin my analysis with Race v. Nationwide Fire Insurance Co., 542 So.2d 347 (Fla. 1989) in which the Florida Supreme Court adopted the test to be applied to determine an insurer's liability under an automobile policy. In Race, the court quoted with approval the following language from John Appleman's treatise, Insurance Law and Practice:
Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained.

*969 Rather, the courts have only required that some form of causal relationship exist between the insured vehicle and the accident. However, liability does not extend to results distinctly remote, though within the line of causation.

* * * * * *
Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produced the injury, but must, itself, produce the injury.

Id. at 349 (emphasis added) (quoting 6B John A. Appleman, Insurance Law and Practice § 4317 (Buckley ed. 1979) (footnotes omitted)). This court applied the same test to a coverage clause in Taylor v. Phoenix Insurance Co., 622 So.2d 506 (Fla. 5th DCA 1993), rev. denied, 634 So.2d 627 (Fla.1994).
The issue presented in this case is one of first impression in this state. Florida courts have never applied Appleman's three rules of construction to exclusionary clauses nor have they ever addressed the precise factual scenario presented here. Nevertheless, several cases from other jurisdictions are instructive. In American Modern Home Insurance Co. v. Rocha, 151 Ariz. 595, 729 P.2d 949 (App. 1986), the Arizona appellate court reversed summary judgment in favor of an insurance company that denied coverage based on the "use of an automobile" exclusion where a tripod being used to slaughter a steer collapsed while being pulled by a rope which was attached to the trailer hitch of the insured's vehicle. In reversing, the court recognized that "if the `use' of the automobile was only incidental to the event that produced liability it should not be an excluded event under homeowner or general liability policies." Id., 729 P.2d at 951 (footnote omitted) (quoting John A. Appleman, Insurance Law and Practice § 4500, at 177 (Berdal ed. 1979)). It further noted that, as here, there were no allegations that the vehicle had been driven negligently. Id., 729 P.2d at 952.
Likewise, in Lawver v. Boling, 71 Wis.2d 408, 238 N.W.2d 514 (1976), the Wisconsin Supreme Court reversed the summary judgment that had been entered in favor of Homestead Mutual Insurance Company after Homestead had denied its insured coverage on the basis of an automobile exclusionary provision. In Lawver, the insured attached a rope to the back of his pickup truck to hoist the plaintiff into the air using a pulley. As the insured moved the truck forward or backward, the plaintiff was raised or lowered as he fastened boards to the side of a barn. The rope eventually snapped, causing the plaintiff to fall and sustain injuries. Id., 238 N.W.2d at 516. The plaintiff sued the insured, who had both an automobile liability policy with Cumis and a CGL policy with Homestead. Both insurance companies denied coverageCumis on the basis that an automobile was not "used" for purposes of coverage, and Homestead because its policy excluded accidents arising out of the use of motor vehicles. Id. at 517. Notably, the court found that coverage existed under the Cumis policy that only included accidents arising out of the use of an automobile, while also finding inapplicable the similar provision in the Homestead policy, which excluded coverage for accidents arising out of the use of an automobile. The court reasoned "that the exclusionary clause in the Homestead policy [should] be given a different, stricter construction than the similar coverage clause in the Cumis policy." Id. at 522. See also Demshar v. AAACon Auto. Transport, Inc., 337 So.2d 963, 965 (Fla.1976) (stating that exclusionary clauses are construed more strictly than coverage clauses) (quoting Aaacon Auto. Transport, Inc. v. Demshar, 312 So.2d 479 (Fla. 4th DCA 1975)); State Farm Mut. Auto. Ins. Co. v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 816, 514 P.2d 123, 128 (1973) (stating that "the fact that an accident has been found to `arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within a similarly worded exclusionary clause of a homeowner's policy.") (citations omitted). Applying the same reasoning in the present *970 case, the accident involving the carpet roll is covered by Hagen's CGL policy. I agree with Hagen that "[t]he negligence was in attempting to pull the carpet off the delivery truck with a rope; what was doing the pulling was incidental to the accident. The same risk would have been created by using a tow motor, a team of mules, or several strong employees to pull on the rope." This conclusion is consistent with the proposition that exclusionary provisions should be narrowly construed.[1] Accordingly, I would hold that the trial court erred in granting summary judgment in favor of Aetna because Hagen's CGL policy covered the situation at hand.
B. The Concurrent Cause Theory
Summary judgment should likewise be reversed based on the concurrent cause theory. In Kalell v. Mutual Fire & Automobile Insurance Co., 471 N.W.2d 865 (Iowa 1991), the court discussed and ultimately relied on the theory of concurrent cause in a case factually similar to the present matter. There, the insured was attempting to remove a dead limb from a tree by tying one end of a rope to the limb, attaching the other end to the back of his pickup truck, and pulling his truck forward. When the limb came loose, it fell and struck the plaintiff, injuring him. Regarding the concurrent cause theory, the court held:
[W]hen two independent acts of negligence are alleged, one vehicle-related and one not vehicle-related, coverage is still provided under the homeowner[`]s policy unless the vehicle related negligence is the sole proximate cause of the injury.
Id. at 868. The court continued:
Removal of a limb with a rope could be negligence without regard to whether a motor vehicle was used to pull the rope. If neighbors had been called in to provide the necessary pulling force, and Kalell was injured the homeowner[`]s policy would clearly apply. The use of a pickup to provide the force, we believe, does not excuse the insured from any negligence in his decision to remove the limb with the rope. This could be found to be an independent act of negligence and one which is covered by the policy.
Id. The court determined that whether Kalell's injuries resulted solely from the negligent use of the vehicle is an issue for the trier of fact and therefore affirmed the denial of summary judgment. Id. at 869. Also, like the courts in Lawver and Partridge, the Kalell court noted that exclusionary provisions should be construed more narrowly than coverage provisions:
Courts construing coverage clauses give the words "arising out of" a broad, general, and comprehensive meaning. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between injury and risk for *971 which coverage is provided. As to an exclusion clause, however, a narrow or restrictive construction is required....
Id. at 867 (citations omitted). The Kalell facts are virtually indistinguishable from the present case. The only difference is that in Kalell, a dead tree limb was attached to the rope that hit the plaintiff, and in this case, the injury was caused by a carpet roll. See also Wallach v. Rosenberg, 527 So.2d 1386, 1387 (Fla. 3d DCA) (stating "that the jury may find coverage where an insured risk constitutes a concurrent cause of the loss even where `the insured risk [is] not ... the prime or efficient cause of the accident'") (quoting 11 George J. Couch, Couch on Insurance 2d § 44:268 (rev. ed. 1982)), rev. denied, 536 So.2d 246 (Fla.1988).
Furthermore, I believe it is clear that Aetna did not intend to exclude this type of accident from its commercial general liability policy. At best, there is an ambiguity in the exclusionary language as applied to the facts of this case. This court is required under Florida law to resolve this ambiguity in favor of coverage. See Premier Ins. Co. v. Adams, 632 So.2d 1054, 1055 (Fla. 5th DCA 1994) ("If ambiguity is found to exist, the policy language should be liberally construed in favor of the insured and against the insurer.") (citations omitted). Thus, under either theory, (1) strict construction of the exclusionary clause or (2) concurrent cause, I would reverse the summary judgment denying coverage.

DUTY TO DEFEND
Finally, I believe that Aetna had a duty to defend Hagen under the second amended complaint.[2] In Smith v. General Accident Insurance Co. of America, 641 So.2d 123 (Fla. 4th DCA 1994), disagreed with by Stevens v. American Bankers Ins. Co. of Florida, 651 So.2d 1219 (Fla. 3d DCA 1995),[3] the plaintiff sued a taxi cab company and its insurer for automobile negligence and negligent hiring after he was struck and injured by a taxi cab. Relying on an automobile exclusion, the insurance company refused to defend the claim. Id. at 124. The Fourth District found that the insurer had a duty to defend the negligent hiring count, stating that "the alleged negligent hiring of ... [the driver] who directly and negligently caused the injury to the plaintiff, gives rise to Insurer's duty to defend under the general business liability policy." Id. at 126. The court reached this conclusion because
[t]he duty to defend is determined solely by the allegations in the complaint against the insured, not by the insured's defenses.... If the allegations in the complaint state facts bringing the injury within the policy's coverage, the insurer must defend regardless of the merit of the lawsuit. Any doubt about the duty to defend must be resolved in favor of the insured.
Id. at 124 (citations omitted). The court therefore reversed that portion of the trial court's order ruling that the plaintiff's allegations did not give rise to a duty to defend the claim for negligent hiring. Id. at 126.
In reaching its conclusion, the Smith court relied heavily on Klaesen Brothers, Inc. v. Harbor Insurance Co., 410 So.2d 611 (Fla. 4th DCA 1982). In that case, the representative *972 of Harrison's estate sued the owner of Carnival Attractions after a Carnival employee shot and killed Harrison. The complaint also alleged that Carnival was negligent in hiring Mr. Pitts, the perpetrator. Carnival made demand upon its insurance company to defend the suit, and the insurer refused because the policy only covered bodily injury or property damage arising out of the ownership, maintenance, or operation of a carnival. It asserted that the intentional criminal act was outside the policy limits. Id. at 612. Although the trial court found there was no coverage, the appellate court reversed, stating:
If the allegations in the plaintiff's pleading against the insured state facts bringing the injury within the coverage of the policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff... [because] the duty to defend [is] not... limited only to meritorious suits.
Id. at 613 (citations omitted). The court continued:
The wrongful death complaint alleges (at least marginally and by reasonable implication) that appellant's conduct in negligently hiring and retaining Pitts, and its vicarious liability for Pitts's acts while in the course and scope of his employment, arose out of the ownership, maintenance or operation of a carnival, and operations necessary or incidental thereto. These allegations, even if untrue and even though denied by appellant, entitled appellant to a defense as an insured under the policy.
Id. (emphasis added).
Aetna distinguishes Smith and Klaesen on the basis that they were appeals from declaratory judgments while this matter involved a bad faith claim. Its main contention though is that those cases did not involve a situation such as this where the insurance carrier first defended, then denied coverage and withdrew from the defense, and thereafter the insurer filed a second amended complaint. Aetna cites Judge Griffin's concurring opinion in Allstate Insurance Co. v. Conde, 595 So.2d 1005 (Fla. 5th DCA 1992) in which she criticized the practice of including spurious negligence claims to compel an insurance company to provide a defense on an intentional tort claim. See id. at 1008-09 (Griffin, J., concurring). Aetna contends that Hagen and Richardson did just that by couching the second amended complaint in such a manner that it hides the fact that an automobile was involved in the accident.[4] Additionally, Aetna cites dicta in Marr Investments v. Greco, 621 So.2d 447 (Fla. 4th DCA 1993) in which the court stated, "It is wrong to require the insurance company to defend against facts that are clearly not within the coverage policy, even though the `complaint' may be." Id. at 449.
While Aetna's argument seems persuasive at first glance, other courts, including Smith, have considered and rejected it. Notwithstanding its dicta, the Marr Investments court reversed the granting of summary judgment for the insurance company, stating that the trial court is restricted solely to the allegations of the complaint in determining if there is a duty to defend. Id. at 449-50. Klaesen also recognized this proposition when it stated that the insurance company had a duty to defend based on the complaint's allegations "even if untrue." Klaesen, 410 So.2d at 613 (emphasis added). The Florida Supreme Court, as well as other district courts, has also recognized that the duty to defend is controlled by the allegations in the complaint. See National Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla.1977) ("The allegations of the complaint govern the duty of the insurer to defend.") (citation omitted) (footnote omitted); Irvine v. Prudential Property & Casualty Ins. Co., 630 So.2d 579, 579-80 (Fla. 3d DCA 1993) (insurer's duty to defend arises from allegations in complaint, as opposed to actual facts or insured's version of them, and where some allegations in complaint require *973 insurer to defend insured and some do not, insurer must defend entire suit) (citations omitted); Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1307 (Fla. 1st DCA 1992) (finding that if the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit), rev. denied, 621 So.2d 1065 (Fla.1993); International Surplus Lines Ins. Co. v. Markham, 580 So.2d 251, 253 (Fla. 2d DCA 1991) ("If the complaint in the liability suit alleges facts that bring the action within the insurance policy and facts that exempt the insurer from its duty to defend, the insurer will still be required to defend the action, at least until the covered claims are determined.").
In sum, I would find that the trial court erred in granting Aetna's motion for summary judgment because Aetna had a duty to indemnify Hagen for the injuries sustained because the CGL's exclusionary clause does not apply, and even if it did, the concurrent cause theory precludes summary judgment because there is an issue of fact as to which of the two causes brought about Richardson's injury. Furthermore, I find summary judgment was likewise improper because Aetna had a duty to defend Hagen in the action. Accordingly, I respectfully dissent.
PETERSON, C.J., concurs.
GRIFFIN, J., concurs in part.
GRIFFIN, Judge, dissenting.
I agree with Judge Goshorn's analysis that a covered act of negligence could consist of failing to use a safe means to unload the carpet from the delivery truck. The fact that the power supplied in carrying out the unsafe method of unloading was a motor vehicle is not ipso facto fatal to coverage.[1] I do not see, however, how we can dispose of the duty to defend issues. Every issue below, other than coverage, was reserved by the parties to litigate later. The appellants' bad faith claim is plainly predicated on the allegations of the amended pleading; I can't even find a copy of the original complaint in the file. Even if the majority view were that there was a duty to indemnify, it would be hard to say there was also a duty to defend in this case without critical facts we do not have, such as whether Aetna had notice of the amended pleading and what exactly the original complaint said. Precisely because the majority view is that there was no duty to indemnify, the separate question of the duty to defend depends on what the original complaint provided and whether Aetna ever had notice of the amended complaint. The problem of affirming on the duty to defend issue in this case is made worse by the fact that the appealed judgment shows clearly that the lower court's decision to enter summary judgment on both the duty to indemnify and the duty to defend was based on a misapprehension of law. The court ruled:
The Court finds the injuries to Jerry M. Richardson arose out of the loading or unloading of an automobile by Jessie Ward. There is no coverage by the clear and unambiguous terms of the policy exclusion and no duty to defend. The damages in this case are not excluded because of who performed the negligent act. The damages are excluded because they arose out of the loading and unloading of an automobile.
Both appellant and appellee seem to agree this reasoning is incorrect. On appeal, this rationale isn't even discussed; the parties have moved to the issue that is the subject of the en banc opinion. I don't think the facts on the duty to defend issue are well enough developed to support a summary judgment.
NOTES
[1] This is the standard according to Appleman, Insurance Law and Practice, section 4317 and National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla. 3d DCA 1971).
[2] Except as otherwise provided by statute or principle of public policy, insurance contracts are regarded in the same light as ordinary business contracts between individuals and are subject to the same general principles of construction. The parties are entitled to make their own contract so long as they do not offend some rule of law or contravene public policy, and a contract which is not uncertain as to meaning and which fulfills these requisites will be enforced as made. It should not be the policy of the court to make a new contract for the parties. Appleman, Insurance Law and Practice, section 7381.
[1] In response to Hagen's contention that the exclusionary provision is inapplicable, Aetna cites a number of cases from outside of this jurisdiction which find that different accidents having some connection with an automobile arose out of the use of an automobile for the purposes of interpreting a coverage clause, not an exclusionary clause. See Fireman's Fund Ins. Co. v. Canal Ins. Co., 411 F.2d 265 (5th Cir. 1969); Great Am. Ins. Co. v. General Accident Fire & Life Assurance Corp., 321 F.2d 948 (5th Cir.1963); Alliance Mut. Casualty Co. v. Boston Ins. Co., 196 Kan. 323, 411 P.2d 616 (1966); Wheeler v. London Guarantee & Accident Co., Ltd., 292 Pa. 156, 140 A. 855 (1928); Quality Dairy Co. v. Ft. Dearborn Casualty Underwriters, 16 S.W.2d 613 (Mo.App.1929); Stole v. U.S. Steel Corp., 34 Misc.2d 103, 227 N.Y.S.2d 595 (N.Y.Sup.Ct.1962). These are therefore inapplicable to the present case.

Likewise, six of the eight Florida cases Aetna has cited are distinguishable because they also involved coverage provisions rather than exclusions. See Government Employees Ins. Co. v. Novak, 453 So.2d 1116 (Fla.1984); National Ben Franklin Ins. Co. v. Valdes, 341 So.2d 975 (Fla. 1976); Taylor v. Phoenix Ins. Co., 622 So.2d 506 (Fla. 5th DCA 1993), rev. denied, 634 So.2d 627 (Fla.1994); Pomerantz v. Nationwide Mut. Fire Ins. Co., 575 So.2d 1311 (Fla. 3d DCA 1991); Halpin v. Hilderbrand, 493 So.2d 75 (Fla. 4th DCA 1986), disapproved, Race v. Nationwide Mut. Fire Ins. Co., 542 So.2d 347 (Fla.1989). The two cases that remain, Fleming v. Hill, 501 So.2d 715 (Fla. 5th DCA 1987) and St. Paul Fire & Marine Insurance Co. v. Thomas, 273 So.2d 117 (Fla. 4th DCA), cert. denied, 282 So.2d 638 (Fla.1973), both held the exclusionary clauses inapplicable because the accidents did not arise out of the use of an automobile for purposes of the provisions, although the Fleming court affirmed the summary judgment order on other grounds.
[2] While it is true, as Judge Harris points out, that the trial court addressed the duty to defend issue notwithstanding the parties' stipulation to the contrary, neither party contested the propriety of the court's action on appeal. Accordingly, it has been waived. See Norris v. Edwin W. Peck, Inc., 381 So.2d 353, 354-55 (Fla. 5th DCA 1980) (stating that "this court should not address portions of orders which have not been raised on appeal and about which the parties are not complaining."); Truxell v. Truxell, 259 So.2d 766, 768 (Fla. 1st DCA 1972) (stating that "[e]rrors not assigned or made a point on appeal in the party's brief ... are considered waived.") (footnotes omitted).

Further, I find the majority's concern of an alleged lack of notice misplaced. The record before us shows that Aetna answered Hagen's complaint without ever raising the issue of lack of notice. In fact, it affirmatively stated that "[n]otice of the occurrence was timely given to Aetna." In any event, by arguing the merits of the lower court's ruling on the duty to defend without claiming that it never received notice of the second amended complaint, Aetna has abandoned that defense.
[3] The Smith court also expressly disagreed with Atkins v. Bellefonte Insurance Co., 342 So.2d 837 (Fla. 3d DCA 1977) to the extent that its opinion conflicted with Atkins. See Smith, 641 So.2d at 126.
[4] The second amended complaint states:

At that time and place, plaintiff Jerry M. Richardson was standing in the back of the truck owned by Carpet Transport, assisting in the unloading of the carpet rolls, when one or more employees of Carpet Country and/or Earl Hagen and Jesse Ward, who were unloading the carpet rolls in the course and scope of their employment, dropped a carpet roll on plaintiff Jerry M. Richardson, causing him to be injured.
[1] The amended complaint alleged:

Defendants had a duty to avoid exposing plaintiff, Jerry M. Richardson to hazardous conditions and breached that duty of care and was negligent by failing to have a forklift truck or other equipment with which the carpet rolls could be safely unloaded.
The final judgment of the court in the liability case contained the finding that:
I find that defendants were negligent in the manner in which they handled the carpet roll and that plaintiff was a business invitee on the defendants' premises to whom they owed a duty of care.