197 So.2d 563 (1967)
ALLSTATE INSURANCE COMPANY, a Foreign Corporation Authorized to Do Business in the State of Florida, Appellant,
v.
Mary Lou DOUGHERTY, Appellee.
No. 66-291.
District Court of Appeal of Florida. Third District.
January 10, 1967.
Rehearing Denied May 1, 1967.
*564 Goodman & Petersen, Richard M. Gale, Miami, for appellant.
Fuller & Brumer, Kenneth L. Ryskamp, Miami, for appellee.
Before PEARSON and SWANN, JJ., and NATHAN, RAYMOND G., Associate Judge.
PEARSON, Judge.
Allstate Insurance Company appeals a final decree in a declaratory decree action. The action was brought by Mary Lou Dougherty who claimed to be a policyholder of the Insurance Company. She brought a complaint for declaratory decree alleging that it was brought for the purpose of determining an actual controversy involving an insurance contract between the parties. She recited a course of dealings with the Insurance Company and alleged that the Insurance Company denied the existence of a policy insuring her. She further alleged that she had been involved in an automobile accident which she had reported. Her prayer was that the court render a decree declaring the policy to be in existence, and that the court assess damages against the defendant for its refusal to extend coverage.
Upon the trial of the cause, two basic issues of fact were developed. They were: (1) whether or not the plaintiff paid the premium due upon the policy before its cancellation, and (2) whether or not the plaintiff's policy was cancelled prior to the accident.
After the trial of the cause, the chancellor specifically found against the plaintiff, appellee, upon the issue of payment.[1]
*565 Upon the second issue of fact, the chancellor stated in the final decree as follows:
"3. That the defense claimed by the Defendant, ALLSTATE INSURANCE COMPANY, based upon cancellation of the insurance policy, be, and the same is hereby denied, in view of the testimony and the Exhibits presented at the final hearing.
"4. That the payment of the additional premium was made after the accident date, but that the correspondence between the Defendant and the Plaintiff is found to have misled the Plaintiff, MARY LOU DOUGHERTY, into believing that she had certain credit for past years with the Defendant, ALLSTATE INSURANCE COMPANY."[2]
The essence of the chancellor's finding upon the second issue is that the Company was equitably estopped to assert the cancellation. This position is based upon the letter written to Mrs. Dougherty at the time that she received a newer and less expensive policy. Mrs. Dougherty had been insured under Allstate's "Standard Illustrator" policy. That policy showed joint ownership of the insured automobile by Mrs. Dougherty and her mother, Mary B. Henkle. The same type of policy was renewed on the anniversary date on December 28, 1962, and a premium notice of $45.30 was mailed to plaintiff. This premium was not paid.
The plaintiff advised the defendant's agent at the end of the year 1962 that she was the sole owner of the insured automobile. As a result of being a sole owner and a "safe driver", the plaintiff was eligible for the defendant's "Crusader" policy, which would result in plaintiff receiving a discount from the base rate.
The defendant, on February 13, 1963, at the plaintiff's request, mailed her a "Crusader" policy replacing the old policy. This new policy was issued to cover the period January 24, 1963, to December 28, 1963. She was advised by a letter from the defendant that any credit for the cancellation of the Standard Illustrator policy would be applied to the new Crusader policy.
The plaintiff was billed for $94.40 when the new (Crusader) policy was issued.
Subsequent to forwarding the Crusader policy to the plaintiff, the defendant sent a notice of cancellation for nonpayment of premium to the plaintiff. The notice was mailed on March 1, 1963, and was to become effective March 14, 1963. The plaintiff has had the same mailing address for 20 years, and the notice of cancellation, bearing said address, was delivered to the post *566 office. Plaintiff testified that she never received the notice of cancellation.
Approximately three months after the notice of cancellation was mailed, the plaintiff was involved in an automobile accident, which occurred between four and four-thirty P.M. on June 4, 1963. At 6:30 P.M. on the same date, a payment of $45.30 was made by check on behalf of the plaintiff to the defendant.
Since the court held that the plaintiff policyholder was excused from the effects of the cancellation by the confusion created by a reference to a credit, we set forth in full the letter of February 13, 1963, from the insurance company to Mrs. Dougherty:
"As you know, the policy covering your 1954 Oldsmobile was issued jointly in your name and Mary B. Henkle. When there is joint ownership of a vehicle it is necessary that we issue our Standard Illustrator policy for it. However, since you have advised that the name of Mary B. Henkle should no longer be on the policy, it was possible for us to cancel the Standard Illustrator policy and issue the Allstate Crusader policy for this vehicle. The policy has been issued for the period January 24, 1963, to December 28, 1963. I am enclosing a copy of the policy for you. Any credit for the cancellation of the Standard Illustrator policy will be applied to the new Crusader policy. The Crusader policy has been written on a short-term basis in order that you could retain your old effective date of December 28.
"Please let us know if there is further question.
 Cordially,
 /s/
 B. Pringle
 Customer Service Division"
The Crusader policy contains a clause which provides that the policy may be cancelled by the company by mailing to the insured, at the address shown in the policy, written notice stating when, not less than ten days thereafter, such cancellation shall be effected. It further provides that mailing the notice shall be sufficient proof of cancellation, and the effective date of cancellation stated in the notice shall become the end of the policy period.
It is a well-established principle, prevailing in Florida, that proof of mailing a notice of cancellation to a named insured at the address stated in the policy shall be sufficient compliance with the policy provision requiring notice to the insured. Convincing evidence of mailing is not rebutted merely by evidence that the notice was not actually received. Where the mailing of the written notice of cancellation, in conformity with the expressed essentials of such a provision, is established, the cancellation is effectual without evidence of the receipt of the notice by the insured. Bradley v. Associates Discount Corp., Fla. 1952, 58 So.2d 857; Service Fire Insurance Co. of New York v. Markey, Fla. 1955, 83 So.2d 855; Aetna Casualty and Surety Company v. Simpson, Fla.App. 1961, 128 So.2d 420.
Applying the principles of law enunciated above to this case, it is readily apparent that the chancellor erred in his findings when he stated:
"I think the burden was on the company to do something to be sure that this notice got to her  for example, by certified mail or registered mail. * * *"
The Supreme Court of Florida has held that where the policy provision does not require mailing by registered mail, the Court cannot read that requirement into the contract. Service Fire Insurance Company of New York v. Markey, supra.
In Aetna Casualty and Surety Company v. Simpson, supra, where the insured did not actually receive written notice of cancellation mailed to him, it was contended that the failure of an automobile liability insurer to tender the unearned premium on a cancelled policy would prevent the insurer from asserting the defense of cancellation. The court held that the failure of the insurance *567 company to tender the unearned premium following cancellation of the policy, standing alone, was not sufficient to estop the insurance company from asserting the defense of cancellation.
A fortiori where no payment of premium has been made on an automobile liability policy and the insured claims payment is based on some "credit," the insurer would not be prevented from asserting the defense of cancellation.
We reach the conclusion that the chancellor misapprehended the law applicable to the instant case and that, under the law as established by the Supreme Court of Florida, the appellant, Allstate Insurance Company, is entitled to a decree discharging it from the claim of the plaintiff. We reverse the final decree and remand the cause with directions to enter a decree for the defendant.
Reversed.
NOTES
[1] "I would like to make some findings of fact, in fairness to everybody.

"I think the testimony is overwhelming that this payment was made on the date the receipt is dated. I do not think the Court has any right to speculate beyond that.
* * * * * *
"It is true that this payment, in my opinion, was made after the occurrence of the accident. I do not think anybody can find any differently.
"Whether it was made by this lady  and I am sure she was trying to tell the truth  or by her husband in an abundance of caution  certaintly there could have been other reasons for making it.
"In other words, if a person has an accident and says, in a frenzy, `Well, you better go over there and pay it,' they may be doing that when they still have an active and live policy. These people are not lawyers. They are laymen."
[2] The above portion of the final decree was based upon the following findings of fact:

"* * * I do feel, however, in view of all of the testimony, that there was not a cancellation of this policy. I think that once the policy is admitted  the number of years and so forth  the burden then shifts to the defendant on a cancellation. And, in view of that letter, that created some idea of a credit to this lady. I think that something more was required  something much more stringent. I have read this provision carefully and mailing is enough.
"I think this Court, as the finder of the facts, must find that the proper things were not done, after having had an eight-year policy, to cancel this lady's policy.
"I think the burden was on the company to do something to be sure that this notice got to her  for example, by certified mail or registered mail  not that I am finding this Court requires this, but I can if the contract says mailing is enough.
"I think as a finder of a fact on a question of reasonableness or unreasonableness, the mere bringing of the paper that they took to the post office should not be enough in a case like this. I think the equities are with the plaintiff.
* * * * * *
"This company insured this lady. I think they were required to do something to carry home to this Court the cancellations. So I am going to find the equities are with the plaintiff."