752 So.2d 733 (2000)
BEST MERIDIAN INSURANCE COMPANY, Appellant,
v.
Daniel TUATY, as Personal Representative of the Estate of Moises Tuaty, Deceased, Appellee.
No. 98-2934.
District Court of Appeal of Florida, Third District.
March 29, 2000.
*734 Armstrong & Mejer, P.A., and Timothy J. Armstrong, Coral Gables, for appellant.
Keith Mack and Jeffrey P. Shapiro and Jack R. Reiter, Miami, for appellee.
Before COPE, FLETCHER and SORONDO, JJ.
COPE, J.
Best Meridian Insurance Company appeals a summary judgment which requires it to pay the proceeds of a life insurance policy which covered the decedent, Moises Tuaty, and rejected the insurer's defense that it had validly canceled the policy. We conclude that there are disputed issues of material fact which preclude the entry of summary judgment, and reverse.

I.
Best Meridian issued a life insurance policy covering Moises Tuaty, a resident of Bogota, Colombia. He arranged to pay the premium by automatic debit from a Miami bank account.
In October 1995, there were insufficient funds in the account to pay the insurance premium. According to Best Meridian, one of its employees, Charo Martinez, sent a letter to Tuaty on November 6 notifying him of the nonpayment. Best Meridian's files indicate that a similar notice was sent on November 16, and that a notice of cancellation was sent on December 27.
In March 1996, Moises Tuaty sent a notice of change of beneficiary for this insurance policy. Best Meridian processed it and confirmed in writing that the beneficiary had been changed. Best Meridian did not advise Moises Tuaty that this policy had been canceled.
In April 1996, Moises Tuaty died. His son Daniel became personal representative and made a claim for the insurance policy benefits. Best Meridian denied the claim, saying that the policy had been canceled for nonpayment in December of 1995.[1]
The personal representative moved for summary judgment, contending that Best Meridian had never given the decedent the required notice that the insurance policy was about to expire for nonpayment. The insurance policy provided that in case of nonpayment, "We will mail notice to the Owner ... of the amount of premium that is required to continue the policy in force." The personal representative contended that the available evidence showed the November lapse notices had never been mailed.
The personal representative asserted first, that a search of his late father's records had not turned up the November or December letters from Best Meridian. Second, it was Best Meridian's routine practice to send a copy of the lapse notice to the insurance agent via courier at the same time the lapse notice was sent to the insured. The insurance agent stated that she never received any lapse notice. Third, Best Meridian had processed the decedent's change of beneficiary form in March 1996, an action which is contrary to the proposition that the policy had been canceled.[2]
*735 Best Meridian opposed the motion for summary judgment by presenting evidence of its routine practice in mailing lapse and cancellation notices. Charo Martinez identified her signature on the first November letter, and testified as to her routine procedure for handling such matters, but did not have a specific recollection of this particular lapse notice. The second November lapse notice, and the December cancellation notice, were computer generated and not manually signed. Best Meridian produced evidence of its routine practice in generating and mailing such notices.
Best Meridian also showed that Daniel Tuaty, like his father, had a life insurance policy with Best Meridian, the premiums for which were paid by automatic debit from the same Miami bank account. When the bank balance became insufficient in October 1995, Best Meridian sent Daniel Tuaty a lapse notice which he actually received. Best Meridian contends this lends support to the proposition that Best Meridian followed its routine practice regarding lapse notices in the case of the Tuaty policies.
The trial court accepted the argument that Best Meridian's evidence of routine practice was legally insufficient to create an issue of fact regarding whether Best Meridian gave the notices required under the insurance policy. Accordingly the court entered summary judgment in favor of the personal representative, and Best Meridian has appealed.

II.
The insurance policy in this case contains a notice provision which states:
All notices or reports we send will be deemed delivered to the persons entitled to notices or reports when we mail them to their last known address as contained in our records.
Under this type of notice provision, notice to the insured is deemed to be complete upon mailing, even if the insured does not actually receive the notice. See Service Fire Ins. Co. v. Markey, 83 So.2d 855, 856 (Fla.1955); Bradley v. Assocs. Discount Corp., 58 So.2d 857, 859 (Fla.1952); Burgos v. Independent Fire Ins. Co., 371 So.2d 539, 541 (Fla. 3d DCA 1979); Allstate Ins. Co. v. Dougherty, 197 So.2d 563, 566 (Fla. 3d DCA 1967); Aetna Cas. & Sur. Co. v. Simpson, 128 So.2d 420, 424 (Fla. 1st DCA 1961).
The insurer need only establish that the required notices were actually mailed. The insurer need not establish that the insured actually received the notice.
The insurance policy does not specify any particular form of mail, so the insurer is allowed to use ordinary mail.[3]See Service Fire Ins. Co. v. Markey, 83 So.2d at 856 (Fla.1955). The burden of proving that the insurance policy was properly canceled in this case rests on the insurer. See Cat `N Fiddle, Inc. v. Century Ins. Co., 213 So.2d 701, 704 (Fla.1968).
The insurer in this case submitted evidence establishing its routine practice in preparing and mailing lapse notices and cancellation notices. While the witnesses did not have a specific recollection regarding these particular notices, they testified that lapse and cancellation letters of this type would be placed in mailing envelopes and delivered to the mail room. Postage would be applied and the letters would be deposited in a United States postal mailbox outside the building.
Under the Evidence Code, "Evidence of the routine practice of an organization, whether corroborated or not and *736 regardless of the presence of eyewitnesses, is admissible to prove that the conduct of the organization on a particular occasion was in conformity with the routine practice." § 90.406, Fla. Stat. (1997). "Evidence of a business' routine office procedure with regard to mailing letters will be admissible to show the letter in question was mailed." Charles W. Ehrhardt, Florida Evidence § 406.1, at 229-30 (1999 ed.); see also Brown v. Giffen Indus., Inc., 281 So.2d 897, 899-900 (Fla.1973); Alvarez v. Florida Ins. Guar. Ass'n, 661 So.2d 1230, 1232 (Fla. 3d DCA 1995); Berwick v. Prudential Property & Cas. Ins. Co., 436 So.2d 239, 240 (Fla. 3d DCA 1983). By proving the routine practice of Best Meridian in mailing lapse and cancellation notices, Best Meridian established a prima facie case that these notices were, in fact, mailed. Also creating an issue is the fact that a lapse notice was mailed to Daniel Tuaty regarding his policy, and he received the notice.
The personal representative disputes the claim that these notices were mailed, pointing out that (1) a search of the decedent's records turned up none of the notices; (2) Best Meridian had a routine practice of sending by courier a courtesy copy of the lapse notice to the insurance agent in Bogota, and the insurance agent received no such notice; and (3) when Moises Tuaty submitted a change of beneficiary form in March of 1996, Best Meridian processed the form and sent confirmation of it to Tuaty. Best Meridian never notified Moises Tuaty that the policy had been canceled.
On the notice issue, then, the two sides have presented conflicting evidence on whether the notices were mailed. See State Farm Mut. Auto. Ins. Co. v. Resnick, 636 So.2d 75, 77 (Fla. 3d DCA 1994). The issue must be resolved at trial. The factual conflict could not be resolved by the trial court in a summary judgment proceeding.
The personal representative appears to argue that once he brought forward facts tending to show that the notices were not mailed, this meant that Best Meridian's evidence of routine practice somehow became inadmissible and disappeared from the case. That is incorrect. There is a triable issue regarding the mailing of the notices. We therefore reverse the summary judgment.

III.
Because there must be further proceedings on remand, we address two ancillary issues.
First, Best Meridian has argued that there is a presumption that "mail properly addressed, stamped, and mailed was received by the addressee...." Brown v. Giffen Indus., Inc., 281 So.2d at 900. That presumption is irrelevant in this case. The presumption would be helpful if the insurer were required to show that the insured actually received the notices in question. If that were the legal issue, then demonstrating that the notices were placed in the mail would create a rebuttable presumption that the notices were actually received by the insured.
As already stated, however, this insurance policy has a notice provision which specifies that notices "will be deemed delivered... when we mail them to their last known address as contained in our records." As already explained, this contract provision means that if the trier of fact finds that the notices were deposited in the mail, then the insured is deemed to have been given noticeeven if the insured does not actually receive the notice. Thus, in this particular case, the factual issue to be resolved is whether the required notices were mailed. The rebuttable presumption that the insured received the notice is irrelevant under this particular insurance policy.[4]
*737 A second issue debated by the parties is whether the personal representative can introduce evidence that the insured did not receive the notices, as evidence that Best Meridian failed to mail them. Under the circumstances of this case, the answer is yes, the personal representative can introduce such evidence.
In Service Fire, the court said that "convincing evidence of mailing is not rebutted merely by evidence that the notice was not actually received." 83 So.2d at 856 (emphasis added). In Service Fire, the "convincing evidence" was a certificate, attached to the insurer's copy of the cancellation notice, stating that the employee had personally mailed it. See id. at 858 (Roberts, J., dissenting).[5] The "convincing evidence" in Bradley was a copy of the cancellation letter accompanied by an employee's certificate that it was posted and a post office department receipt. 58 So.2d at 858. "Convincing evidence" of this type could not be overcome by "merely" introducing evidence that the notice was not actually received. Service Fire, 83 So.2d at 856.
In the present case, Best Meridian relies on its evidence of routine business practice to establish that the notices were delivered. Best Meridian does not have a postal receipt, an employee certificate, or any other particularized evidence relating to these notices specifically. While Best Meridian's evidence is sufficient to make a prima facie case at trial, Best Meridian's showing does not rise to the "convincing" level which would prohibit the insured from questioning the mailing by denying receipt.
Furthermore, the Service Fire rule only states that where the insurer has "convincing evidence" of mailing, the insured cannot rebut it "merely"that is, solely"by evidence that the notice was not actually received." 83 So.2d at 856. In this case, however, the personal representative does not "merely" rely on evidence of nonreceipt. The personal representative also has evidence that Best Meridian's routine practice was to transmit a copy of the lapse notice by courier to the insurance agent contemporaneously (which was not done in this case), and that Best Meridian subsequently processed the change of beneficiary form and reported this to insuredbut never told the insured that the policy had been canceled. Thus, assuming arguendo that Best Meridian's evidence of mailing met the "convincing evidence" threshold (which it does not), the personal representative would still be allowed to contradict the proof of mailing by arguing nonreceipt as one of the multiple facts the personal representative relies on in opposition to Best Meridian's claim of mailing.

*738 IV.
The present motion for summary judgment, and this appeal, only involve the issue of notice. The present appeal does not raise, and we express no opinion on, the question whether the processing of the change of beneficiary form in March of 1996 creates any estoppel, or other equitable defense, to the cancellation of the insurance policy.
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] The decedent had two other life insurance policies with Best Meridian which were in good standing. Best Meridian paid the death benefits on those policies.
[2] The only issue presented by the motion for summary judgment was whether notices required by the policy had been given by Best Meridian. No issue was presented to the trial court regarding whether the processing of the change of beneficiary form, without notifying the insured that the policy had been canceled, creates an estoppel or other equitable defense against the insurance company.
[3] For automobile insurance policies, the proof of notice is now regulated by statute. See § 627.728(5), Florida Statutes (1999); Boman v. State Farm Mut. Auto. Ins. Co., 505 So.2d 445, 449-50 (Fla. 1st DCA 1987).

The court would suggest that the legislature make this statute applicable to insurance policies generally.
[4] In the next-to-last full paragraph of Service Fire there is a discussion of the presumption that an item properly mailed is received by the addressee. 83 So.2d at 856. This occurs in the court's discussion (and paraphrase) of Womack v. Fenton, 28 N.J.Super. 345, 100 A.2d 690 (Ct.App.Div.1953), and is unnecessary to the decision. Both Service Fire and Womack take the position that the legal issue in a policy of this type is whether the notice was mailed, not whether it was received. See Service Fire, 83 So.2d at 856-57; Womack, 100 A.2d at 692; see also Burgos, 371 So.2d at 541; Allstate Ins. Co. v. Dougherty, 197 So.2d at 566; Aetna Cas. & Surety Co. v. Simpson, 128 So.2d at 424.
[5] The proof was described in Justice Roberts' dissent as follows:

[A] copy of a notice of cancellation directed to the insured, to which there was appended a "certificate" of the company's employee that she had that day "personally mailed in a United States Post Office Department mail box provided for first class mail, located in the city stated below, a securely closed envelope with first class postage fully prepaid addressed to the above addressee and address, and containing an exact copy of the foregoing letter." It was stipulated that she would so testify, if she appeared as a witness. It was also shown on behalf of the insurance company that a copy of the cancellation notice and a refund of the unearned premium had been received by the automobile finance company that financed the purchase of the car by the insured, and that the finance company had also written to the insured, referring to the cancellation, and requesting that he take out other insurance on the car.
Id. at 858.