[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14659
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 28, 2012
JOHN LEY
CLERK

D. C. Docket No. 3:10-cv-00289-TJC-JRK

UZONWA J. UMERAH, an individual,

                                        Plaintiff-Appellant,

versus

JOHN HANCOCK LIFE INSURANCE COMPANY (USA),

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 28, 2012)

Before CARNES, WILSON and BLACK, Circuit Judges.

PER CURIAM:

Uzonwa J. Umerah appeals the district court's entry of summary judgment in favor of John Hancock Life Insurance Company (USA) (John Hancock) and against Umerah on her claim for benefits arising out of her deceased husband's life insurance policy. On appeal, Umerah contends the district court erred by concluding the language of the insurance policy was unambiguous, such that actual receipt of the notice of termination was unnecessary. After careful review, we affirm the district court.[1]

## I.  BACKGROUND

John Hancock issued a Flexible Premium Adjustable Life Insurance Policy (Policy) to Umerah's late husband, Gabriel Umerah (Mr. Umerah), effective November 4, 2005. Mr. Umerah provided a Harpers Glen Court address, his residence at the time, on his Policy application. In May 2006, the Umerahs moved a few miles away, but retained ownership of the Harpers Glen Court property. John Hancock was not notified of a change of address.

From November 2005 through August 2008, premium payments in the amount of $1,283.50 were automatically withdrawn from Mr. Umerah's checking account on a monthly basis. On September 3, 2008, however, Mr. Umerah

---

[1] We review the district court's grant of summary judgment *de novo*. *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1333 (11th Cir. 2003).

2

executed a document revoking John Hancock's authorization for automatic withdrawal of the premium payments. The Umerahs did not make any more premium payments for the Policy.

On April 6, 2009, John Hancock's records indicate it generated a "Termination Warning Notice," notifying Mr. Umerah that the premium payments to date were insufficient to maintain coverage beyond April 4, 2009. The notice stated a minimum payment of $2,922.97 was due by June 4, 2009, to keep the Policy in force. A "Termination Warning Notice Reminder" dated May 4, 2009, contained essentially the same information. John Hancock's records also indicate a "Lapse Termination Notice" was generated on June 15, 2009, indicating that as of June 4, 2009, Mr. Umerah's policy was terminated due to insufficient payments. All three notices were addressed to Mr. Umerah's "last known address" at Harpers Glen Court. Although there is nothing in Mr. Umerah's file indicating the notices were returned as undeliverable, Umerah denies receiving these notices.[2]

Mr. Umerah died suddenly on September 30, 2009, and a statement of claim for death benefits was subsequently filed under the Policy. In correspondence dated November 11, 2009, John Hancock denied the claim due to nonpayment of

[2] On appeal, Umerah does not argue John Hancock failed to mail the notices.

the premiums, which had resulted in termination of the Policy effective June 4, 2009.

## II. DISCUSSION

On appeal, Umerah contends the district court erred in concluding the provision "send a notice to your last known address" was unambiguous. Rather, Umerah claims the language is ambiguous, such that actual receipt of the notice of cancellation was necessary.

The insurer bears the burden of proving the insurance contract was cancelled in accordance with the terms of the policy.[3] *Auvil v. Nationwide Mut. Fire Ins. Co.*, 222 So. 2d 46, 48 n.1 (Fla. 3d DCA 1969). If a policy provides for a written cancellation notice, "but does not specify the m[e]thod of giving the written notice, and the notice is given by mail, the effective date of cancellation generally is to be determined based on the date of receipt of the notice by the insured." *Aetna Ins. Co. v. Settembrino*, 324 So. 2d 113, 114 (Fla. 3d DCA 1975). If, however, the policy states that mailing notice is sufficient, Florida courts deem the notice "to be complete upon mailing, even if the insured does not actually receive the notice." *Best Meridian Ins. Co. v. Tuaty*, 752 So. 2d 733, 735 (Fla. 3d DCA 2000).

---

[3] The parties agree Florida law applies in this diversity action.

The Policy provided that 30 days prior to termination of coverage, John Hancock would "send a notice to your last known address, specifying the amount you must pay to bring the policy out of default." This language is distinguishable from the Florida cases requiring actual notice of cancellation when the insurance companies merely state that they will "give" notice, but do not specify the means by which they will provide the notice. *See, e.g., Nunley v. Fla. Farm Bureau Mut. Ins. Co.*, 494 So. 2d 306, 307 (Fla. 1st DCA 1986). Rather, this language is more analogous to the Florida "mail" cases, where the destination—here, the "last known address"—is specified. *See Best Meridian*, 752 So. 2d at 735 (providing that notices would be mailed to the "last known address as contained in [the insurer's] records"); *see also Burgos v. Indep. Fire. Ins. Co.*, 371 So. 2d 539, 541 (Fla. 3d DCA 1979) (noting "[t]he well established principle of law with regard to the issue of cancellation is that proof of mailing a notice of cancellation to a named insured at the address stated in the policy is sufficient compliance with the policy provision requiring notice to the insured"). Here, John Hancock complied with the Policy by "send[ing] a notice to [the] last known address," language that shifted the risk of delivery to the insured. Under the facts and circumstances of this case, the district court did not err in concluding that the Policy's termination

5

provision was unambiguous, and that John Hancock complied with the terms of the policy, resulting in termination of the Policy before the insured's death.

**AFFIRMED.**