788 So.2d 992 (2001)
STATE FARM FIRE AND CASUALTY COMPANY, Appellant/Cross-Appellee,
v.
Charles B. HIGGINS, and Cheryl L. Ingalls, f/k/a Cheryl L. Steele, Appellees/Cross-Appellants, and
Maureen Bradley, f/k/a Maureen Higgins, Appellee.
No. 4D99-2989.
District Court of Appeal of Florida, Fourth District.
January 3, 2001.
*994 Elizabeth K. Russo of Russo Parrish Appellate Firm, Miami, and Sachs, Sax & Klein, P.A., Boca Raton, for Appellant/Cross-Appellee.
John P. Wiederhold of Wiederhold, Moses & Rubin, P.A., West Palm Beach, for Appellee/Cross-Appellant-Charles B. Higgins.
Theodore A. Deckert of Law Office of Theodore A. Deckert, P.A., and Joseph K. Still, Jr., P.A., West Palm Beach, for Appellee/Cross-Appellant-Cheryl L. Ingalls, f/k/a Cheryl L. Steele.

EN BANC
GROSS, J.
The main issues in this case concern the viability of a declaratory judgment action on the issue of insurance coverage when the underlying negligence lawsuit remains pending. We hold in this case that a declaratory judgment is proper to determine the existence of insurance coverage, a ruling that is consistent with the modern trend according broad scope to the Declaratory Judgments Act, Chapter 86, Florida Statutes (2000).
On July 2, 1995, Cheryl Ingalls filed a complaint against Charles Higgins, seeking damages for the intentional torts of assault and battery. Having been a legal secretary for almost twenty years, Ingalls typed the complaint. She worked for the lawyer who filed the lawsuit on her behalf.
The assault and battery complaint alleged that Higgins had "willfully, intentionally, and with malice" committed the torts "in an effort to hurt and cripple" Ingalls. Typical of the specific factual allegations was the following:
Without warning, provocation, or reason, [Higgins] grabbed [Ingalls's] wrist and threw her against the stairs in the home. As [Ingalls] came up from the stairs he grabbed her wrist again and threw her across the room where she struck a couch and fell on the floor.
At the time Ingalls's lawsuit was filed, Higgins and his ex-wife Maureen Bradley owned several properties covered by State Farm homeowners policies. All the policies provided coverage for bodily injuries "caused by an occurrence." The policies defined an "occurrence" as "an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damage; during the policy period."
An exclusion in each policy provided that there was no coverage for bodily injury *995 "which is either expected or intended by an insured" or for bodily injury "to any person ... which is the result of willful and malicious acts of an insured[.]"
On January 29, 1997, Ingalls served an amended complaint adding a negligence claim against Higgins's former wife, Maureen Bradley. The amended complaint alleged that during an altercation, Higgins "violently threatened, touched and injured" Ingalls.
In response to the amended complaint, State Farm provided a defense under a reservation of rights and filed a declaratory judgment action naming Higgins, Bradley, and Ingalls as defendants. The action sought a determination of fact issues pertaining to coverage and a declaratory decree as to whether State Farm owed a duty to defend and indemnify Higgins under the policies.
The two actions were consolidated and Ingalls reached a settlement with Maureen Bradley.
Ingalls then filed her second amended complaint against Higgins, which alleged only a cause of action for negligence. The pleading eliminated all the specific description of an intentional tort contained in the earlier complaints. It alleged simply that
HIGGINS came upon the [property] while... INGALLS and BRADLEY were there. At that time, the Defendant, HIGGINS, began to argue with BRADLEY. In the course of this altercation, Defendant, HIGGINS, negligently injured Plaintiff, INGALLS.
In response to this last amendment, State Farm amended its complaint for declaratory relief.
The declaratory relief action proceeded to jury trial. The jury made the factual findings that Higgins intended or expected to cause the injuries for which Ingalls was seeking damages and that Higgins "willfully and maliciously" caused those injuries.
In response to Higgins's and Ingalls's post-trial motions, the trial judge granted a new trial finding that certain "inflammatory remarks" by State Farm's lawyer concerning Ingalls's settlement with Bradley were "fatally prejudicial" to the defendants' case. State Farm appealed the order granting a new trial and Higgins and Ingalls cross-appealed on numerous points.

I
Both Ingalls and Higgins argue that the trial court should have granted their motions for directed verdict on the issue of State Farm's duty to defend the action against Higgins, its insured. We agree.
It is clear that a liability insurer's obligation to defend a claim made against its insured must be determined solely from the allegations in the complaint. See State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1077 n. 3 (Fla.1998); Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla.1977); Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 812 (Fla. 1st DCA 1985). The duty to defend arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. See McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 758 So.2d 692, 695 (Fla. 4th DCA 1999). An amended complaint supersedes an earlier pleading where it "does not express an intention to save any portion of the original pleading." Baron Oil, 470 So.2d at 815. When an amended complaint supersedes an earlier one, the allegations of the amended complaint control the duty to defend. See id.; C.A. Fielland, Inc. v. Fid. & Cas. Co. of N.Y., 297 So.2d 122, 127 (Fla. 2d DCA 1974).
*996 The actual facts of the situation are not pertinent; "the trial court is restricted to the allegations of the complaint, regardless of what the defendant and others say actually happened." Marr Invs., Inc. v. Greco, 621 So.2d 447, 449 (Fla. 4th DCA 1993) (citation omitted). Thus, the duty to defend is broader than the duty to indemnify, in the sense that the insurer must defend even if the facts alleged are actually untrue or the legal theories unsound. See West Am. Ins. Co. v. Silverman, 378 So.2d 28, 30 (Fla. 4th DCA 1979); Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1306-07 (Fla. 1st DCA 1992). "Once the insurer's duty to defend arises, it continues throughout the case unless it is made to appear by the pleadings that the claims giving rise to coverage have been eliminated from the suit." Baron Oil, 470 So.2d at 815.
Ingalls's second amended complaint alleged a cause of action for negligence. If one looks only to the four corners of the pleading, as the law requires, the cause of action fairly and potentially falls within the coverage of the policy. The trial court erred in failing to grant a directed verdict on the issue of State Farm's duty to defend.

II
Both Higgins and Ingalls argue that the declaratory judgment action was not a proper vehicle to decide whether Higgins's conduct was excluded from coverage under the policy. As authority, both briefs cite to Columbia Casualty Co. v. Zimmerman, 62 So.2d 338 (Fla.1952), and Smith v. Milwaukee Insurance Co., 197 So.2d 548 (Fla. 4th DCA 1967). Both parties quote this court's opinion in Smith, where we noted "the use of declaratory proceedings is not available where the object of the proceedings is to try disputed questions of fact as a determinative issue rather than to seek a construction of definite stated rights, status, or other relations." 197 So.2d at 550 (citing Columbia Cas., 62 So.2d 338).
The availability of a declaratory judgment to try disputed questions of fact is one of the most difficult areas of Florida law. To arrive at the proper resolution of this issue, as well as the related issue discussed in Point III, requires a court to step back and view the evolution of the declaratory judgment remedy through Florida legal history.
The seminal case on this issue is the 1952 decision of Columbia Casualty. In that case, Mary Yates drove a car owned by Martin and Erma Wiltse and collided with a bus, causing injury to the bus driver and ten passengers. Columbia Cas., 62 So.2d at 338. Several of the injured parties sued Yates and Martin Wiltse. See id. Yates and her insurance company made demand on Columbia Casualty Company, Wiltse's insurer, to defend the suits. See id. Columbia Casualty declined to defend Yates, because her conduct fell under an exclusion in the policy. As the supreme court explained:
The policy provide[d], in effect, that if the automobile covered by the policy is being driven by someone without the knowledge and consent of the insured, the insurance company is not liable to the insured and is not required to defend under the policy. This provision is plain and unambiguous.
62 So.2d at 339.
Yates and her insurer filed a declaratory judgment action to determine Columbia Casualty's obligation to defend the pending and potential future suits against Yates. See id. The trial court granted a motion to dismiss the suit for failure to state a cause of action under the declaratory judgment statute. See id.
*997 The supreme court affirmed the dismissal. It considered the pivotal issue to be "whether or not Mary Yates was driving the automobile with the knowledge and consent of the owners, or either of them" so as to fall outside the exclusion in the policy. Id. The supreme court observed that the exclusion in the insurance policy was "plain and unambiguous" and that the validity or construction of the policy was not at issue. Id. The court characterized the question of whether the automobile was being driven with the knowledge and consent of the insured as "a question of fact to be determined as any other question of fact," requiring "no construction of the insurance policy in order to determine the meaning thereof." Id.
The supreme court held that the declaratory judgment statute did not extend to cover such a case. The court reasoned:
The complaint in this case shows on its face that there is no doubt as to the meaning of the contract. The only doubt which is shown to exist is whether or not the automobile was being driven with, or without, the knowledge and consent of the insured. This is not a doubt as to the meaning of the contract or as to the proper interpretation of the contract. It is simply a doubt as to what will be the ultimate outcome of a consideration of the facts bearing on the question of whether or not the automobile was being driven with the knowledge and consent of the insured.
Id. at 340.
The court focused on the language of section 87.02, Florida Statutes (1951), which provided in pertinent part that a person
who may be in doubt as to his rights under a ... contract or other ... instrument in writing or whose rights, status or other equitable or legal relations are affected by ... contract ... or other ... instrument in writing may have determined any question of construction or validity arising under such... contract ... or instrument in writing....
Id. at 339 (emphasis supplied in original). The supreme court thus concluded that the case did not present an issue of "construction" of the insurance policy within the meaning of section 87.02. In a strong dissent, Justice Terrell[1] contended that the scope of the Declaratory Judgments Act went beyond the power to construe a written instrument to include those cases where a "right, status, immunity, power or privilege" was at stake. Id. at 341.
Columbia Casualty did not acknowledge other portions of the declaratory judgment act which might have supported a broader interpretation of its scope in reaching fact *998 issues. The wording of the declaratory judgment statute in force at the time Columbia Casualty was decided is similar to the present version of the statute found at Chapter 86, Florida Statutes (2000). For example, the 1951 version of the statute provided that
circuit courts may render declaratory decrees, judgments or orders as to the existence, or nonexistence (1) of any immunity, power, privilege or right; or (2) of any fact upon which the existence or nonexistence of such immunity, power, privilege or right does or may depend, whether such immunity, power, privilege or right now exists or will arise in the future.
§ 87.01, Fla.Stat. (1951). This language is similar to that in section 86.011, Florida Statutes (2000). Both versions of the statute provided that "[a] contract may be construed either before or after there has been a breach" thereof. Compare § 87.03, Fla.Stat. (1951) with § 86.031, Fla.Stat (2000). Both versions allowed for the submission of fact issues to a jury. Compare § 87.08, Fla.Stat. (1951) with § 86.071, Fla.Stat. (2000).
The supreme court followed Columbia Casualty in Travelers Indemnity Co. v. Johnson, 201 So.2d 705, 706 (Fla.1967). In that case, Travelers Indemnity Company issued an insurance policy with uninsured motorist coverage to Delta Stewart. See id. at 705. Norma Johnson drove Stewart's automobile and collided with an uninsured vehicle. See id. Johnson made a claim against Travelers under Stewart's policy. See id. Travelers filed a declaratory judgment action seeking to define its obligation to Johnson. See id.
The central issue in the action concerned the "requirement in the policy that written notice of injury be given." Id. at 705. The circuit court entered a decree favoring Travelers. See id. The first district reversed, ruling that the dispute "was one purely of fact and not a construction of the policy itself. Sufficiency or insufficiency of the notice to Travelers as required by the policy ... was the only issue involved and such was `not within the purview of the Declaratory Judgment Statute.'" Id. (quoting the first district's opinion in Johnson v. Travelers Indem. Co., 191 So.2d 61, 62 (Fla. 1st DCA 1966)).
Johnson applied for certiorari review in the supreme court. In approving the decision of the district court, the supreme court adhered to its ruling in Columbia Casualty.[2]See id. at 706. The court also noted its continued disagreement with the analysis contained in Justice Terrell's dissent in Columbia Casualty. See id.
The supreme court again followed Columbia Casualty in Bergh v. Canadian Universal Insurance Co., 216 So.2d 436 (Fla.1968). That case concerned a professional liability insurance policy issued to a doctor. The insurance company filed a declaratory judgment action to determine its obligation to cover a malpractice claim against the doctor. See id. at 438. The supreme court characterized the issue in the suit as a factual onewhether the doctor's delay in giving the insurance company notice of the malpractice claim amounted to a breach of the insurance policy. See id. at 440. The supreme court held that if there was no issue concerning *999 the "interpretation of the language of the policy," then there was no basis for a declaratory judgment action. Id.
This court adhered to the Columbia Casualty rule in New Amsterdam Casualty Co. v. Intercity Supply Corp., 212 So.2d 110, 114 (Fla. 4th DCA 1968), and Smith v. Milwaukee Insurance Co., 197 So.2d 548, 550 (Fla. 4th DCA 1967). In Smith, for example, we reversed a declaratory decree in favor of an insurance company. See 197 So.2d at 551. The trial judge had ruled that a driver of a car "was not a person insured under a policy in that the motor vehicle he was operating was being operated without the permission of the owner." Id. at 549. Finding "no doubt as to the meaning of the insurance contract or as to the proper interpretation of the omnibus clause or the exclusionary clause," we held that since the only disputes in the case were factual, "the declaratory judgment statute was improperly invoked." Id. at 550-51.
In sum, the strict rule of Columbia Casualty is that for a declaratory judgment of an insurance policy to lie, there must be a question of the construction of the policy and not only fact issues for resolution. However, the more recent trend in the case law is to accord broader scope to the declaratory judgment act in reaching fact issues.
One approach has been to find a question of "construction" of a policy where a court applies the rule of construction that a policy is to be liberally construed in favor of coverage. See Effort Enters. of Fla., Inc. v. Lexington Ins. Co., 666 So.2d 930, 931-32 (Fla. 4th DCA 1995).
District courts of appeal have also allowed declaratory judgments of fact issues in insurance coverage disputes by treating the "construction" of a policy as including an explanation of the "legal effects and consequences of the instrument in question." BLACK'S LAW DICTIONARY 734 (5th ed.1979).
Thus, in Tindall v. Allstate Insurance Co., 472 So.2d 1291, 1292 (Fla. 2d DCA 1985), the insurance company obtained a declaratory judgment that it could refuse to pay a personal injury protection (PIP) claim because the claimant failed to cooperate with it "in accordance with the policy's assistance and cooperation clauses." On appeal, the claimant attacked the declaratory judgment, arguing that it involved only "a resolution of factual matters rather than mere ambiguity in the insurance contract." Id. Without extensive discussion, the second district observed that "[d]isagreements concerning coverage under insurance policies are proper subjects for a declaratory judgment" and held that declaratory relief was proper. Id. It does not appear that Tindall involved any claim that the policy's assistance and cooperation clauses were ambiguous.
A homeowner's policy was involved in Travelers Insurance Co. v. Emery, 579 So.2d 798 (Fla. 1st DCA 1991). The insurance company sought a declaratory judgment that the policy excluded coverage because an accident fell under the policy's business pursuit exclusion, a provision that was "clear and unambiguous." Id. at 800. The first district ruled that a declaratory judgment action was proper, stating
[w]e find it equally clear that this declaration does not depend solely upon a factual determination, but requires the court's interpretation of the "business pursuits" policy exclusion as applied to a particular set of facts alleged in the petition.
Id. at 802 (emphasis in original).
If, as the opinion indicates, the policy provision were "clear and unambiguous," there could have been little for the court to interpret, since "interpretation" is "[t]he *1000 art or process of discovering and ascertaining the meaning of a ... contract." BLACK'S LAW DICTIONARY 734 (5th ed.1979). It seems that the Emery court's use of the term "interpretation" was inappropriate, and that it should have used the broader term "construction." Black's Law Dictionary distinguishes between "interpretation" and "construction":
In the strict usage of this term, "construction" is a term of wider scope than "interpretation;" for, while the latter is concerned only with ascertaining the sense and meaning of the subject-matter, the former may also be directed to explaining the legal effects and consequences of the instrument in question.
Id.
In State Farm Fire & Casualty Co. v. All Phase Interiors & Remodeling, Inc., 578 So.2d 1134, 1135 (Fla. 4th DCA 1991), this court confronted the issue of whether an accident fell under a general liability policy's exclusion of claims arising out of injury to an employee. In response to the argument that the lawsuit raised only a factual issue, we ruled that a declaratory judgment was appropriate, since there were "interpretive issues" of whether the purported employment relationship triggered the exclusionary clause in the policy. Id. at 1136. The panel was gently critical of Columbia Casualty:
We will not burden this opinion with extensive historical and analytical discussion of the issue of whether declaratory relief is available to determine solely "factual" issues. There are numerous cases on both sides of the controversy. We would hope that the supreme court, given the appropriate opportunity to do so, will revisit its position on this issue laid down in Columbia Casualty Co. v. Zimmerman, 62 So.2d 338 (Fla.1952), in view of the present wording of paragraph (2) of section 86.011, Florida Statutes (1989), which commences: "Of any fact...."
Id. Like the panel in Travelers Insurance, this court in All Phase used the term "interpretive issues" to connote an explanation of the legal effects and consequences of applying the policy exclusion to the facts of the case. See also State Farm Fire & Cas. Co. v. Cronk, 530 So.2d 445, 446 (Fla. 4th DCA 1988) (finding that declaratory relief was proper because the case required the court to "interpret the policy language").
The fifth district carried this court's discomfort with Columbia Casualty a step further in Allstate Insurance Co. v. Conde, 595 So.2d 1005 (Fla. 5th DCA 1992). Conde permitted an insurance company to bring a declaratory judgment action to determine coverage under two policy exclusions which were not ambiguous. See id. The case involved application of the policy exclusions to the disputed facts. See id. at 1007.
The fifth district held that the declaratory suit was proper, adopting an expansive view of the reach of Chapter 86 and receding from an earlier case which had held that declaratory relief was available only to "settle the meaning of ambiguous language or clauses in an insurance policy." Id. at 1006-07 (quoting Vanguard Ins. Co. v. Townsend, 544 So.2d 1153 (Fla. 5th DCA 1989)).
In a footnote, Conde acknowledged the more limiting language of Columbia Casualty, and hypothesized that, "because of the pleadings" the supreme court might not have considered sections of the Declaratory Judgments Act which would have supported a more expansive view of the act. Conde, 595 So.2d at 1007 n. 4. Because of the potential conflict between Columbia Casualty and its holding, Conde certified a question to the supreme court:

*1001 MAY THE INSURER PURSUE A DECLARATORY ACTION IN ORDER TO HAVE DECLARED ITS OBLIGATION UNDER AN UNAMBIGUOUS POLICY EVEN IF THE COURT MUST DETERMINE THE EXISTENCE OR NONEXISTENCE OF A FACT IN ORDER TO DETERMINE THE INSURER'S RESPONSIBILITY?
Conde, 595 So.2d at 1008.
This court has cited Conde with approval. See Britamco Underwriters, Inc. v. Central Jersey Invs., Inc., 632 So.2d 138, 139 (Fla. 4th DCA 1994); see also Marr Invs., Inc. v. Greco, 621 So.2d 447, 449-50 (Fla. 4th DCA 1993) (agreeing "wholeheartedly" with Judge Griffin's concurring opinion in Conde ). In Britamco, we approved a declaratory judgment action where there does not appear to have been an issue concerning the construction of endorsements in the underlying insurance policy.
In sum, case law in the last twenty years has moved in the direction of more freely allowing declaratory judgment suits as a vehicle for resolving fact issues deciding the existence of insurance coverage. These cases appear to have expanded the holding of Columbia Casualty.
We have found no case where the supreme court has answered the question certified in Conde. However, we detect in Canal Insurance Co. v. Reed, 666 So.2d 888 (Fla.1996), a shift in policy that cannot be reconciled with the narrow language in Columbia Casualty.
In Canal Insurance, Richard Reed was involved in an automobile accident. See id. at 890. Michael York was a passenger in Reed's car. See id. York sued Reed, "alleging injuries caused by Reed's negligence during the vehicle's operation." Id. Reed brought a third-party complaint for liability coverage from his insurer, Canal Insurance Company. See id. By a counterclaim, Canal filed a complaint for declaratory judgment to determine whether its policy with Reed covered York's injuries. See id. The company asserted "that passenger York was specifically excluded from coverage under Reed's policy because York was Reed's employee at the time of the accident and was thus specifically excluded from coverage under Reed's policy." Id. (footnote omitted). The opinion sets forth the policy exclusion in footnote one; it is not ambiguous.[3]Id.
The trial court severed the case into three distinct actions, one being Canal's third-party counterclaim for declaratory judgment against Reed and another being the underlying personal injury action between York and Reed. In the former case, the "trial court entered a declaratory judgment finding that Canal was required to provide liability coverage to York for the accident." Id.
The precise issue before the supreme court in Canal Insurance was whether the declaratory judgment was appealable as a final order. At two points in the opinion, the supreme court emphasized that the "coverage issue could have been addressed in a separate declaratory judgment action rather than as a counterclaim in a third-party proceeding in the original action." Id. at 890; see id. at 891. The court held that "a declaratory judgment is appealable as a final order regardless of whether the *1002 judgment is rendered in a separate declaratory judgment action or as part of a third-party action...." Id. at 891.
The supreme court also recognized that a declaratory action properly proceeded apart from the underlying tort action. The court observed that a trial judge "has the discretion to stay the underlying action between the parties pending resolution of the appeal" of the declaratory judgment in the coverage dispute. Id. at 892. The court acknowledged that resolution of coverage disputes impacted settlement of the underlying action and that "it would be in the best interests of all the parties for coverage issues to be resolved as soon as possible." Id.
Underlying the holding in Canal Insurance, is the assumption that the declaratory relief judgment at issue sprang from a valid cause of action. The case involved application of an unambiguous policy exclusion to determine a purely factual issue whether York was Reed's employee at the time of the accident. Under Columbia Casualty's limited view of what constitutes "construction" of a policy under the Declaratory Judgments Act, there was no basis for a declaratory action. However, the cause of action would be proper under the broader view of the act exemplified by the more recent district court of appeal cases, which would allow litigation directed at the legal effects and consequences of policy language, when applied to the facts of the case.
We hold that this case was proper for declaratory relief, since it involved the construction of policy language under the facts of the case, consistent with Effort Enterprises, Britamco, Conde, All Phase, Emery, and Cronk. The supreme court shifted in the direction of these cases in Canal Insurance. Recognizing that the supreme court has not definitively ruled, we certify the question certified by the fifth district in Conde.

III
Higgins argues that the declaratory action should have been deferred until resolution of the underlying negligence lawsuit between Ingalls and Higgins. We hold that the trial court properly allowed the declaratory judgment action to be tried first. In so holding, we recede from one of our decisions and certify conflict with two decisions of the third district court of appeal.
Without any discussion, we wrote in Marr Investments, Inc. v. Greco, 621 So.2d 447, 449 (Fla. 4th DCA 1993), that where an insurer had a duty to defend, the issue of "coverage should be deferred until liability [was] decided." As authority for this proposition, Marr cites to International Surplus Lines Insurance Co. v. Markham, 580 So.2d 251 (Fla. 2d DCA 1991). Like Marr, Markham was a case primarily concerned with an insurer's duty to defend. In the last sentence of the opinion, the second district stated that if the insurer had a duty to defend, "then any determination as to its duty to indemnify should be deferred until the issue" of liability was decided in the underlying tort action. Markham, 580 So.2d at 254. To support this statement of the law, Markham cites to National Union Fire Insurance Co. v. Lenox Liquors, Inc., 358 So.2d 533, 535 (Fla.1977). The main issue in that case was whether the allegations in the complaint triggered the insurer's duty to defend. We have found nothing on page 535 of Lenox Liquors that concerns the proposition for which Markham cited the case. If Marr and Markham stand for the rule that a declaratory action concerning coverage must always follow a determination on the merits in the underlying tort action, *1003 the legal support for such an absolute rule is thin.
Home Insurance Co. v. Gephart, 639 So.2d 179 (Fla. 4th DCA 1994), is more on point. There, we affirmed the dismissal of an insurer's declaratory action seeking a ruling on its duty to indemnify its insured. See id. at 180. We found the action to be premature since the declaratory case involved "factual questions concerning the transference of funds that will likely be of concern in the underlying litigation." Id. Our concern was that the fact issues in the declaratory judgment action could not be separated from those in the underlying tort action.
Without citing to it, Gephart is aligned with Burns v. Hartford Accident & Indemnity Co., 157 So.2d 84 (Fla. 3d DCA 1963). In that case, the plaintiff filed a wrongful death action against the owner of a dump truck. See id. at 85. A crucial issue in the case was whether the truck owner was an independent contractor or a sub-contractor who could take advantage of the statutory fellow servant rule, thereby restricting the plaintiffs claim to workers' compensation. See id. The truck driver's indemnity insurer filed a declaratory judgment action against the parties to the pending tort action, seeking a determination of that issue. See id. The third district reversed a decree in favor of the insurer, and held that the trial court "should not have entertained the suit for declaratory decree." Id. The court wrote that
when a third party has brought a negligence action against an insured, and there is raised or necessarily involved therein an issue between those litigants which has a bearing on the applicability of the policy, the fact that the insurance company's liability to its insured may be affected by the outcome of the negligence action will not permit the insurer to remove a material issue from the negligence action where it belongs and drag it into another court under the guise of seeking a declaratory judgment, and there seek its predetermination.
Id. (citations omitted).
One problem with the holding in Burns is its effect on the liability insurer's ability to participate in the resolution of a fact issue that determines coverage. This is of concern, since in some cases, the interests of the plaintiff and the defendant in a tort action might be aligned in framing a cause of action to fit within the coverage of a liability policy.
The fifth district recognized this problem in Vanguard Insurance Co. v. Townsend, 544 So.2d 1153, 1156-57 (Fla. 5th DCA 1989), receded from in Allstate Insurance Co. v. Conde, 595 So.2d 1005, 1005 (Fla. 5th DCA 1992). The court suggested that where the insurer had provided a defense under a reservation of rights, a judgment in the initial tort litigation would not bind the insurance company in a subsequent case. The fifth district took a different direction in Conde, when it receded from Vanguard and recognized that a declaratory action could include both the plaintiff and the defendant in the underlying tort suit.
One crucial factor distinguishes this case from Gephart. In Gephart, the plaintiff in the underlying litigation was not joined as a party in the declaratory action, giving rise to "the possibility of inconsistent adjudications." 639 So.2d at 180. In this case, State Farm named Ingalls as a party defendant in the declaratory action and she participated fully in the trial.
We believe that the better procedural approach in this type of case is that adopted by the fifth district in Conde. In the underlying lawsuit, the plaintiff in Conde sued under the alternative theories *1004 of intentional wrongdoing and negligent conduct. Intentional wrongdoing was excluded from coverage under the policy. See 595 So.2d at 1006. The court observed that in such a case, "the indemnity issue and the duty to defend issue are inextricable." Id. The fifth district held that before a determination of the defendant's liability in the underlying tort case, the insurer could properly bring a declaratory judgment action to determine both the duty to defend and coverage, so long as the injured party plaintiff in the tort suit was made a party to the declaratory action. See id. at 1008. The court's reasoning is especially applicable to this case:
It is only appropriate that the insurer be permitted to participate in the coverage issue in an alternative, mutually exclusive case. Otherwise, the insurer must sit back and provide an attorney to "defend" an insured by, in concert with the plaintiff, establishing that what might be the most deliberate shooting was, in fact, a negligent shooting. Even if not bound by the coverage verdict, it may nevertheless suffer the [State Farm Fire & Casualty Co. v. Nail, 516 So.2d 1022, 1023 (Fla. 5th DCA 1987)] "irreparable harm" by providing a defense when it had no legal obligation to do so.
Id.
Significant policy reasons support this result. As Judge Pariente wrote in Britamco:[4]
Generally, an insurance carrier should be entitled to an expeditious resolution of coverage where there are no significant, countervailing considerations. A prompt determination of coverage potentially benefits the insured, the insurer and the injured party. If coverage is promptly determined, an insurance carrier is able to make an intelligent judgment on whether to settle the claim. If the insurer is precluded from having a good faith issue of coverage expeditiously determined, this interferes with early settlement of claims. The plaintiff certainly benefits from a resolution of coverage in favor of the insured. On the other hand, if coverage does not exist, the plaintiff may choose to cut losses by not continuing to litigate against a defendant who lacks insurance coverage.
632 So.2d at 141.
In Canal Insurance, the supreme court approved a procedure that allows a trial court the discretion to proceed with a declaratory judgment action before final resolution of the underlying tort action. See 666 So.2d at 891. The case rests on the assumption that the declaratory action may be decided first. In discussing an appeal from a declaratory judgment, the court wrote that the "trial judge has the discretion to stay the underlying action between the parties pending resolution of the appeal or to permit it to continue concurrently with the appeal process." Id. at 892. The supreme court acknowledged the policy this court articulated in Britamco, "that it would be in the best interests of all the parties for coverage issues to be resolved as soon as possible." Id.
This case is unlike Conde, since the second amended complaint contained only a negligence action, and not the mutually exclusive theories of negligence and intentional tort. This difference is not significant. *1005 The right to an early resolution of a coverage issue should turn on the meritson whether a policy exclusion applies and not on creative pleading.
The earlier Florida cases like Columbia Casualty and Burns grew out of a legal climate where courts enforced more rigid pleading requirements and viewed causes of action as narrow pigeonholes within which litigants were required to fit their claims. Prior to 1967, Florida's law and equity courts were separate. See Weinstein v. Aisenberg, 758 So.2d 705, 708 n. 1 (Fla. 4th DCA 2000) (Gross, J., concurring). A declaratory judgment began in Florida as an action in equity. The predecessor to the Uniform Declaratory Judgments Act,[5] was "limited in scope" and provided that anyone "interested under a deed, will, contract in writing or other instrument in writing may file a bill in equity for the determination of any question of construction arising under the instrument...." Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808, 809 (1946) (emphasis supplied).
The 1943 Uniform Declaratory Judgments Act, Chapter 21820, Laws of Florida (1943), enlarged "the scope of substantive and remedial remedies over its predecessor." Ready, 24 So.2d at 808. It blurred the distinction between law and equity by making the remedy available on the law side of the court, giving a law judge the "power to give as full and complete equitable relief as it would have had if such proceeding had been instituted as a bill in equity." Ch. 21820, Laws of Fla. (1943). Faced with a new, potentially far-reaching cause of action, the early Florida cases were cautious in interpreting the new act. See, e.g., Ready, 24 So.2d at 810-812 (Brown, J., concurring).
Over the forty-eight years since Columbia Casualty was decided, courts have grown more adept at handling declaratory judgments. More recent cases reflect the evolution of the declaratory judgment remedy, where the mechanism can be used to achieve a just result in a given case. Canal Insurance demonstrates the use of a declaratory judgment in 1996 that would have been unavailable in 1952. This evolution is part of a "deliberate reconsideration" of the scope of the declaratory judgment, a process that Justice Holmes described as central to the development of the law. O.W. Holmes, The Path of the Law, 10 HARV.L.REV. 457, 469 (1897).
For these reasons, we hold that it was proper for the declaratory judgment case to be tried in advance of the underlying tort action. As the supreme court stated in Canal Insurance, this is a discretionary decision of the trial court. We recede from that portion of Marr inconsistent with this opinion. We certify conflict with Burns and Irvine v. Prudential Property & Casualty Insurance Co., 630 So.2d 579 (Fla. 3d DCA 1993).[6]Irvine declined to follow Conde. See 630 So.2d at 580. The third district ruled that "the better process is to require the insurer to defend the action under a reservation of rights[,]" and thereby place the risk of the "uncertainty of the ultimate outcome" on the insurance company. Id. Irvine's approach to this type of case places more emphasis on the pleadings, which can arise through creative lawyering, rather than the actual mechanism causing injury, *1006 which is the subject of the policy language pertaining to the existence of coverage.

IV
We affirm the trial court's order granting a new trial. "[A] stronger showing is required to reverse an order allowing a new trial than to reverse an order denying a motion for new trial." Cenvill Cmtys., Inc. v. Patti, 458 So.2d 778, 781 (Fla. 4th DCA 1984). As noted by this court in Suarez-Burgos v. Morhaim, 745 So.2d 368, 370 (Fla. 4th DCA 1999), rev. den., 767 So.2d 461 (Fla.2000):
In Castlewood International Corp. v. LaFleur, 322 So.2d 520, 522 (Fla.1975), the court explained the standard of review of such decisions:
Since at least 1962, it has been the law of Florida that a trial court's discretion to grant a new trial is "of such firmness that it would not be disturbed except on clear showing of abuse...." Cloud v. Fallis, 110 So.2d 669, 672 (Fla.1959). A heavy burden rests on appellants who seek to overturn such a ruling, and any abuse of discretion must be patent from the record. See Hendricks v. Dailey, 208 So.2d 101, 103 (Fla.1968); Russo v. Clark, 147 So.2d 1, 3-4 (Fla.1962).
(Emphasis supplied) (footnote omitted).
In Suarez-Burgos, we affirmed the trial court's order granting a new trial because we would not find that the trial court's decision "was completely arbitrary and fanciful or that no reasonable judge would agree with it...." 745 So.2d at 370.
During opening statements in this case, State Farm's attorney made reference to the settlement between Ingalls and Bradley, and the fact that Bradley had "gone away." Ingalls's attorney timely objected and, at a bench conference, remarked that this issue had been raised in a motion in limine.
Contained in Chapter 768 of the Florida Statutes entitled "Negligence," Section 768.041(3), Florida Statutes (2000) provides that "[t]he fact of ... a release or covenant not to sue, or that any defendant has been dismissed by order of the court shall not be made known to the jury." As we noted in Rowe v. Leichter, 561 So.2d 647, 648 (Fla. 4th DCA 1990), "[t]hese provisions appear in substantially similar form in section 46.015 of the statutes entitled `Release of parties.'" Section 46.015(3), Florida Statutes (2000) provides: "The fact that a written release or covenant not to sue exists or the fact that any person has been dismissed because of such release or covenant not to sue shall not be made known to the jury."
In Rowe, this court explained that "[t]he purpose of these provisions is to implement public policy in favor of settlement and avoidance of litigation." 561 So.2d at 648. We discussed the application of the statute in Cenvill Communities. In that case, Alfred Patti was struck and killed by a car driven by Clarence Hoffman in the retirement community of Century Village. See Cenvill, 458 So.2d at 779. A suit against Hoffman was settled. See id. The widow Patti sued Century Village and Cenvill Communities, the owner of the roadway and the adjacent property, for wrongful death. See id. This court ruled that the trial court abused its discretion in granting a new trial, where, in opening statement, defense counsel said: "and indeed, we expect the evidence and testimony in this case will reflect that Mrs. Patti made a claim against Mr. Hoffman as a result of this accident." Id.
In so holding, this court noted that "[m]ention of a `claim' does not come within the specific prohibition against `revealing the fact of release or covenant, or that *1007 any defendant has been dismissed'" within the meaning of section 768.041(3). Id. at 780. Significantly for this case, we also wrote that, "[h]ad the instant comment regarding a `claim' having been made by Patti against Hoffman referred instead to a `settlement,' this case would clearly fall within the statute ..." Id.
The attorney's remarks in this case contravene the statute, since they clearly mentioned the settlement. We reject State Farm's assertion that section 786.041 is inapplicable because this is not a negligence action, but a declaratory relief action pertaining to the existence of insurance coverage. This case is closely related to the negligence action and in both, disclosure of the settlement could affect the outcome. The jury may have been motivated to find in favor of State Farm because it believed that Ingalls had already received money from Bradley.

V
In the event the case is retried, we address evidentiary issues raised in the briefs that might arise on retrial.
One issue at trial was whether the State Farm policy concerning a Deerfield Beach property was properly canceled for nonpayment of premiums. State Farm had the burden of proving cancellation in accordance with the provisions of the policy. See Cat `N Fiddle, Inc. v. Century Ins. Co., 213 So.2d 701, 704 (Fla.1968); Best Meridian Ins. Co. v. Tuaty, 752 So.2d 733, 735 (Fla. 3d DCA 2000). Under section 90.406, Florida Statutes (2000), evidence of a business routine with regard to mailing letters is admissible to show that the letter in question was mailed in accordance with the routine practice. See Best Meridian, 752 So.2d at 736 (citing to 1997 version of statute). Whether State Farm's witness on this issue had adequate knowledge of the routine mailing practice to testify about it is a close question. See Alexander v. Allstate Ins. Co., 388 So.2d 592, 593 (Fla. 5th DCA 1980). We do not reach it in light of the order for a new trial.
We agree with the trial court that the original complaint filed in the negligence action was admissible against Ingalls under section 90.803(18)(b), Florida Statutes (2000), as a statement offered against a party "of which the party has manifested an adoption or belief in its truth." The evidence was that Ingalls, an experienced legal secretary, typed the original complaint for her employer, who filed it on her behalf.
We distinguish Adams v. Merrill Lynch, Pierce, Fenner & Smith, 392 So.2d 4 (Fla. 4th DCA 1980), which involved the admissibility of a party's original answer under a separate provision of the evidence code, section 90.803(18)(c). In Adams, we noted that the pleading was "unsworn and unauthorized." 392 So.2d at 5. There was no claim that the party had read, typed, or adopted the original answer; if the pleading was admissible, it would have been on the theory that the lawyer filing it was "specifically authorized by the party" to make the statement at issue, a proposition that Adams rejected. § 90.803(18)(c), Fla. Stat. (2000); see Hines v. Trager Constr. Co., 188 So.2d 826, 831 (Fla. 1st DCA 1966) (holding that "[s]o long as the pleadings in a cause are merely a tentative outline of the position which the pleader takes before the case is fully developed on the facts, then ... the pleadings are inadmissible as evidence to prove the facts alleged therein").
Finally, because State Farm offered them in evidence, Ingalls's statements to various physicians were admissible as admissions of a party under section 90.803(18)(a). It was not necessary to also *1008 qualify the statements under section 90.803(4), as statements for the purpose of medical diagnosis or treatment.

VI
With regard to the parties' arguments concerning the jury instructions, we note that the interrogatory verdict form correctly framed the fact issues in the language of the policy exclusions. We find no error in the court's jury instructions. See Aetna Cas. & Sur. Co. v. Miller, 550 So.2d 29, 30 (Fla. 3d DCA 1989) ("Dr. Miller testified that he, being mildly upset, intentionally tugged on both ends of the stethoscope draped around Dr. Vinsant's neck. That he did not intend to cause the resulting physical injury does not avoid the policy's intentional act exclusion."); Hartford Fire Ins. Co. v. Spreen, 343 So.2d 649, 651-52 (Fla. 3d DCA 1977) (holding in case where insured deliberately hit victim in face but did not intend to damage the face or eye, that "an injury caused by the insured in an intentional assault and battery is not covered under the Hartford homeowner's liability policy which provides coverage for damages caused by an `accident' and excludes from coverage damages `which are either expected or intended from the standpoint of the insured'").
WARNER, C.J., DELL, GUNTHER, STONE, POLEN, FARMER, KLEIN, STEVENSON, SHAHOOD, TAYLOR and HAZOURI, JJ., concur.
NOTES
[1] In Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808, 809 (1946), Justice Terrell "explicated in great detail the purpose of the Declaratory Judgment Act." Lambert v. Justus, 335 So.2d 818, 820 (Fla.1976). Speaking for the majority in Ready, Justice Terrell wrote:

Viewed in its proper perspective, the Declaratory Judgments Act is nothing more than a legislative attempt to extend procedural remedies to comprehend relief in cases where technical or social advances have tended to obscure or place in doubt one's rights, immunities, status or privileges. It should be construed with this objective in view, but it should not be permitted to foster frivolous or useless litigation to answer abstract questions, to satisfy idle curiosity, go on a fishing expedition or to give judgments that serve no useful purpose. It should be construed to aid those who have a meritorious cause rather than to provide a way of escape for those who would be adversely affected. There is no reason whatever why the highway to justice should be strewn with hurdles and pitfalls that make one who secures it wonder if the `game is worth the candle.'
24 So.2d at 809.
[2] In 1976, the supreme court cited to the holdings of Travelers Indemnity Co. v. Johnson, 201 So.2d 705 (Fla.1967) and Columbia Casualty Co. v. Zimmerman, 62 So.2d 338 (Fla.1952) with approval. See Lambert v. Justus, 335 So.2d 818, 821 (Fla.1976). The court described the two cases as "actions for declaratory decree brought by insurance companies seeking only a judicial determination of disputed facts, unrelated to the construction or validity of the insurance contracts." Id.
[3] The exclusion at issue provided:

This insurance does not apply ... to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury....
Canal Ins. Co. v. Reed, 666 So.2d 888, 890 n. 1 (Fla.1996).
[4] Britamco Underwriters, Inc. v. Central Jersey Investments, Inc., 632 So.2d 138, 140 (Fla. 4th DCA 1994) did not involve a declaratory judgment case presenting fact issues in common with the underlying tort case. That is unlike this case where a jury's evaluation of Higgins's conduct for negligence would be similar to the determination of whether he "expected or intended" the bodily injury or caused such injury through "willful and malicious acts," within the meaning of the policy exclusions.
[5] Chapter 7857, Laws of Florida (1919); section 62.09, Florida Statutes (1941).
[6] We do not find an express and direct conflict with International Surplus Lines Ins. Co. v. Markham, 580 So.2d 251 (Fla. 2nd DCA 1991). The last sentence in Markham is dicta.